EQUITABLE LIFE ASSURANCE SOCIETY *v.* ELIZA J. CLARK.

1. EVIDENCE. *Writings. Production of from adversary. Code 1892, § 927. Laws 1900, p. 136. Recusant party. Judgment against as penalty.*

Code 1892, § 927, as amended laws 1900, p. 136, empowering the court, on good cause shown, to order a litigant to give his adversary an inspection and copy, or permission to take a copy, of any books, papers, or documents in his possession, or under his control, containing evidence relating to the merits of the litigation, and in default of compliance with the order to render judgment against him, is highly penal and requires an extraordinary state of case to justify the rendition of a judgment thereunder, and the power granted thereby should be exercised with great caution to avoid the invasion of the rights of parties.

2. SAME. *Case not within.*

Where the complainant in a suit for the recovery of a money demand averred in her bill that she did not know the sum due her, but believed it was a large sum, therein stated, and sought discovery, and the defendant made in answer a full disclosure, denying liability, and depositions had been taken, an unsworn petition by her solicitor is not a showing of good cause, under the statute, such as to justify an order directing defendant to submit his books and papers for an examination and copy, and a failure to comply with an order made theron will not support a decree as of a *pro confesso.*

FROM the chancery court of, second district, Coahoma county. HON. A. McC. KIMBROUGH, Chancellor.

Mrs. Clark, appellee, was complainant in the court below; the Equitable Life Assurance Company, appellee, was defend-

ant there.   From a personal decree, rendered under the provisions of the act of March 10, 1900, for $15,000 in complainant's favor, the defendant appealed to the supreme court.

Section 927, code 1892, is as follows:

"927 (2277).  Copy of books, papers, or documents furnished.—The court in which any action or suit is pending may, on good cause shown, and after notice of the application to the opposite party, order either party to give to the other, within a specified time and on such terms as may be imposed, an inspection and copy, or permission to take a copy, of any books, papers, or documents in his possession or under his control containing evidence relating to the merits of the action or proceeding or of the defense thereto; and if compliance with such *order* be refused, such books, papers, or documents shall not be given in evidence in the action or proceeding by the party so refusing; and the court may punish the recusant party as for a contempt of court."

The act of March 10, 1900 (laws 1900, p. 136), amends said section by omitting the word order, in italics, and by adding to the end of the section these words: "And if a complainant, or plaintiff, fails to comply with such order, the court may, on motion, give the like judgment for the defendant as in cases of non-suit or dismissal; and if a defendant fails to comply with such order, the court may, on motion, give judgment or decree against him by default or confession."

The husband of Mrs. Clark, the appellant, complainant in the court below, nearly thirty years ago took out a policy of insurance in the Equitable Life Assurance Society, the appellee, for the sum of $10,000, and before his death he had paid the company nearly that sum.   By the application for insurance, the husband requested that he be put in what is called the southern class of policy holders, and the policy issued recites that he was put in that class at his request, and the policy on its face discloses that he, as a policy holder, was to participate in profits.   The extent of this participation in profits to

the holders of this class is stated in the policy itself, to be determined in this way; the participation was to be in the proportion that the rate of mortality of the southern class bore to the rate of mortality of the others assured by the society, but not in the southern class.

When Mr. Clark died, Mrs. Clark applied for the fruits of the policy, and requested the company to notify her what the policy was then worth. She knew it was worth $10,000, as the policy on its face stipulated for payment of that sum, but, under the participation in profits clause, she expected a great deal more. She received a letter from the company stating there were no profits, and nothing in which to participate. She had further correspondence on the subject, but with no satisfactory results. At length she was led to believe that the representations of the company were true, and so she surrendered the policy and received $10,000 in full payment of the company's obligation.

Thereafter she filed her bill in this cause, seeking to have cancellation of the receipt in full given by her to the company on the surrender of the policy, on the ground that she was misled by false statements made to her by the company at the time of the surrender; statements untrue, as she avers in the bill, both in law and fact. She sought by this cancellation, to be put in position as if she had not surrendered the policy and receipted the company in full payment of the obligation. She prayed an accounting with the company, by which she may see what they owe her. The bill averred that complainant did not know what the company owed her, but she avered that the company owed her a considerable sum, believed to exceed $10,000; that she had not the data with which to ascertain the true amount. Complainant sought an accounting, averring that in determining she had no right to participation in profits, the company had proceeded along erroneous lines, it having based its calculations on the theory that she was entitled to participate only in profits made in the business of the southern class,

whereas, according to the terms of the policy, she was entitled to participate in any profits made by the company generally, limited only by the proportion that the rate of mortality of the southern class bears to the rate of all other assured by the society.

The case was twice before in the supreme court, and is reported, first appeal, *Clark* v. *Equitable Life Assurance Society,* 76 Miss., 22, which overruled a demurrer to the bill. When the case was remanded to the chancery court complainant's counsel presented an unsworn petition asking that defendant be required to submit its books to her, the material averments of which are as follows: "Complainant alleges that it is necessary for her to have an inspection of said books, for the reason, that, otherwise, the defendant refuses permission to the complainant to examine any of its books or documents relative to the merits of this suit, and necessary to be examined in order that a correct account may be taken by the commissioner heretofore appointed by decree of this honorable court to take and state an account between complainant and defendant. She avers that from no other source can she secure positive and direct testimony, whereby a just, true, and correct account between complainant and defendant can be stated; that an examination of the said books, papers, documents, and records will disclose the fact, upon the taking and stating of an account between complainant and defendant, by the commissioner heretofore appointed, and as heretofore directed and decreed to be taken and stated, that she is entitled to certain dividends, earnings, and profits, which by right she should have and recover of the defendants by reason of the application for insurance, and insurance effected on the life of the late John Clark, deceased, by the said defendant, according to the terms of the certain policy of insurance mentioned in the original bill of complaint herein filed."

On this petition, against the protest of the defendant, the chancery court made the following order:

"The court being fully advised, doth order, adjudge, and decree: That the said defendant be and is hereby directed to allow said complainant herein to examine and take copies of all books, papers, and documents in the possession of said defendant or under its control as relates to its business of insuring lives between the dates of March 3, in the year 1869, and July 23, 1892, upon reasonable notice given by complainant to defendant of the time when complainant desires to examine and take copies of said books and papers and documents.

"Ordered, adjudged, and decreed, this 13th day of July, in the year 1899."

The defendant appealed from this order to the supreme court—the second appeal—but the appeal was dismissed by the court, without a written opinion, on the ground that it was not an appealable decree. Thereafter, some effort having been made to execute the order, the complainant moved the court for a decree, as of a pro confesso, against the defendant under the statute above quoted: The complainant seems to have insisted that she had the right under the order to employ whomsoever she pleased to aid her in examining defendant's books; the defendant was perfectly willing for the complainant herself or her solicitor to make the examination, but would not consent for accountants of rival insurance companies, and persons who were likely to make profit from the information which they would obtain from an access to its books to examine them. The court below concurred in complainant's contention, adjudged the insurance society in fault, sustained the motion, and rendered the personal decree for $15,000, now appealed from, against defendant.

*Mayes & Harris,* for appellant.

1. The court below erred in making the order of July 13, 1899, because there was no "good cause shown" therefor, as was required by the statute to be done.

The statute provides that whatever order the court may make for an inspection shall be made "on good cause shown." Such preliminary is by the statute made a condition precedent to the right of the court to make any order whatever. The cause had been on the 28th of August, 1898, referred to the commissioner to state an account. Afterwards the complainant made a written motion for the order. The court will see that it is a mere pleading, signed by the solicitor for the complainant, and is not sworn to or proven in any way.

Even under the statutes which do not in express terms require that cause shall be shown for the making of orders akin to this, and which are much less drastic than is this, in that they only authorize orders requiring the production of books and papers on the trial of a cause, it has been commonly held that still cause must be shown; and such requirement is not met by a mere unsworn pleading containing averments drawn by astute counsel. To permit a showing of this nature by way of fulfillment of the statutory requirement, or by way of fulfillment of the requirement which the court imports into such statutes by construction, would be to nullify the requirement itself, to all practical intent and purposes; and it would lay bare the privacy of every litigant's financial affairs at the mere turn of an adroit lawyer's pen. 6 Enc. Pl. and Pr., p. 807, par. j.

Furthermore, not only is this application a mere pleading and not under oath, but it does not show either the materiality of the testimony which is to be obtained by the proposed inspection, or the necessity for such inspection. The court will remember that the original bill avers that complainant is not able to state with accuracy the amounts of the dividends and profits which she claims herself entitled to, but only alleges that she is informed and believes she is entitled to something exceeding the sum of $10,000; and this averment is made without any showing whatever as to the source of her information,

or its reliability. The answer in the case, which was on file when this order was applied for and made, denied absolutely that complainant was entitled to anything; there were also on file numerous and full depositions of the officers and actuaries of the company, with full cross-examination by the complainant, in which they showed that there was nothing whatever in the complainant's demands. It is, we submit, perfectly manifest that this inspection was nothing but a "fishing" experiment on the part of complainant, to see if in some way or other she could not, by examination of the defendant's books, contrive to cast some doubt upon, or avoid the sworn testimony on file in the case, there being nothing whatever in the record in any way calculated to cast the least doubt on the accuracy of the voluminous evidence produced in behalf of the defendant as to the contents of the very books and papers which she proposes herself to examine. It was in such attitude of the record that this application was made, and it is not necessary to point out how far short the application in its allegations is as to all the requisite averments in regard to the materiality of the search and the necessity for it.

All the more are the foregoing considerations cogent when it is remembered that we have a statute in this state under which the complainant could have filed interrogatories and have taken such other and further depositions of the corporation itself as she might desire, such interrogatories being framed in the full light of the depositions already on file.

We now refer, on the subject of the materiality and necessity, to 6 Enc. Pl. & Pr., pp. 804-806. "An order for production or inspection will be denied where the application appears to be made solely for 'fishing' purposes, as, for instance, to ascertain whether the applicant has a cause of action," etc. 6 Enc. Pl. & Pr., p. 792, par. 3.

2. The court below erred in making the order of July 13, 1899, because the same does not impose terms, as by the statute was required to be done.

Let us now see exactly what this order proposes to do. It is an order, without any limit as to the duration of the examination to be made, and without any limit as to its scope and purpose except that it be made from such books, papers, and documents as shall contain evidence of the facts material to be determined in the taking of the account. There is no other or further description whatever of the books and papers to be examined. Who is to determine whether any book or paper which complainant proposes to examine, when in New York armed with that order, does or does not "contain evidence of the facts material to be determined?"—the complainant or the defendant?—the court could not be there. How is it to be determined, even by the complainant, whether any book or paper does or does not "contain evidence of facts material to be determined," etc., except by an examination first made?—thus, in effect, ordering an examination to be made, in order to determine whether an examination may be made; since the books and papers are in no way described save by general reference to the tendency of their contents as evidence? Who is to determine what are the "facts material to be determined in the taking of the account," the containing of evidence about which is made the test of complainant's right to examine?—the complainant or the defendant?—for, obviously, again, the court could not. It is manifest, on analysis, that the order appealed from, in effect, assumed to give complainant the right to take up her sojourn in defendant's place of business, during an indefinite period of time, and examine at her leisure, and practically at her uncontrolled will, far removed from the eye of the court and its restraining power, all of the defendant's books and papers, and take copies of anything she may choose—all for no other purpose, even pretended, than to search those books and papers in order to see if, somewhere, evidence might not be found to make out a case against defendant, which case in her bill she could not even state. What guarantee has the court given or in what way has the defendant been secured in

its right, that complainant shall not abuse the license which is given by the order in this suit? The statute manifestly contemplated that such inspection should be made somewhere within the reach of the court, so that the court might supervise the same; or, surely, some restraint should have been imposed upon the complainant in her inspection whereby, if she abuse the same, the court might give to the defendant some protection.

3. The court below erred in holding that the order made had been disobeyed, and in rendering the decree pro confesso for that reason.

The order was "that the said defendant be, and is hereby directed to allow said complainant herein to examine and take copies of all the books," etc. The defendant had a perfect right to stand on the literal language of the order, and refuse to allow any one but the complainant to examine its books. If complainant desired a broader order, she should at least have applied for it, and have obtained it if she could. However, recognizing the fact that complainant was a woman, defendant, rather than seem to be contumacious, consented to go even beyond the letter of the order and allow complainant's counsel to make the examination at his full leisure and without any restriction; but it was met with a further demand, not authorized by the order, which was that a third party, not in any way connected with the litigation, a party selected by the complainant, should be put in possession of defendant's books, to browse amongst them, not under the direction of the court, and not in any way responsible to any person, and for an unlimited period of time, with authority to make such extracts, whether garbled or otherwise, and to compile such memoranda as he pleased in regard to the business of the defendant, which extracts and memoranda would obviously be available to be used for any purpose to which such expert or accountant should see proper to devote them—all this was more than the counsel

of defendant conceived. could be demanded under this order, and more than they felt that defendant was required to submit to.   We submit that when this highly penal statute is applied, it should be only in a case where there is a clear willful disregard of the direction of the court.   In this instance it was a difference of opinion about the true meaning of the court's order; and certainly the position taken by the defendant was one which was in exact accord with the language of the order, except that the defendant proposed to allow complainant's counsel to make the examination, although he was not embraced in the order.   To apply this statute in its stringency in a case where the defendant refused to allow an inspection to be made by a person not named, nor even indicated by the order by any general terms under which such person might be claimed as classed, would be an exceedingly ·latitudinarian application of it.   *Summerfield* v. *Prichard,* 17 Beav., 9, is directly in point.   There the court had granted an order that the "plaintiff, his attorney, or agent," might inspect a certain book.   The plaintiff took around, not any agent of his, properly speaking, but his uncle, and tendered him as being better qualified to make the inspection.   Defendant refused, and the court sustained him.

4. The court below erred in rendering decree pro confesso, and for the sum of $15,000 against the appellant, without any proof that the same was owing.

The statute provides for a decree pro confesso; but it is a highly penal statute and will be strictly construed.   On a pro confesso, while the defendant can no longer deny liability, still he is bound no further than the bill well states a definite liability.   If the allegations of the bill are indefinite, or the demand of the complainant is in its nature uncertain, the requisite certainty must be afforded by proof.   1 Beach Eq. Pr., secs. 196, 200; 1 Daniel's Chy. Pl & Pr. (3d Am. ed.), p. 506, note 4; *Spears* v. *Cheatham,* 44 Miss., 64; *Gordon* v. *Warfield,* 74 Miss., 553.

The averments of the bill, as to the amount due, are insufficient to support the decree on a pro confesso.

*J. W. Cutrer,* for appellee.

The facts necessary to be ascertained in order to the stating of an account with accuracy are all within the knowledge of the appellant. Appellee charged, and the record shows, that appellant was a mutual life insurance company, and whether mutual or not, its books and records were the only source from which could be taken a statement of the earnings and profits made by appellant, and apportionable to the policy of appellee during the life of the policy, and payable at its maturity. There was, therefore, upon the face of the petition presented to the court, supported by the record, sufficient cause for the rendering of the order. All that is required is that facts shall be stated that show how and why the discovery or inspection is material. It is not necessary to show beyond question that the books or documents sought contain material evidence.

If facts and circumstances are shown which warrant a presumption that they contain evidence which will prove or tend to prove some of the facts which the party applying have to establish, the application should be granted. 6 Enc. Pl. & Pr., 804. The granting of orders of this character is addressed to the discretion of the court, and it will be presumed that the court acted upon sufficient cause. 97 Ill., 629. The statute does not require that the order shall specify what evidence was heard by the court, and when granted, the action of the court, acting about a matter of discretion, will not be disputed, if only, the other requisition exist, a suit pending and notice of the application to the opposite party. 6 Enc. Pl. & Pr., 794. In addition, there must be a submission to such terms, if any, as the court may see proper to impose. The record shows a compliance with all these requisites.

On the other hand, it is not denied that the books and documents, whereof an inspection is sought, are within the posses-

sion of appellant, and contain evidence relating to the merits
of the controversy on its then present stage.   This would seem
plainly to settle the first cause of exception against appellant.

It is urged, however, that the proceeding is in the nature of
a fishing bill of recovery; and, therefore, it should not have
met with favor in the court below.   This is not true.   The pro-
ceeding under the statute is not one which is to be considered
and dealt with as a bill of discovery, in chancery.   *Jacques* v.
*Collins,* 2 Black., 23.

If the conditions and terms imposed by the statute are met,
the order must follow as of course, so far as such action is sub-
ject to review on appeal.   But the criticism is entirely without.
merit.   There is no longer any need for "fishing," so far as the
rights of appellee are concerned.   There has been an adjudica-
tion in her favor of her right to recover certain sums from ap-
pellant, confessedly withheld by appellant, by reason of its
erroneous statement of her account with it.   What that sum
is, and the items that go to make it up, are within the appel-
lant's knowledge and appear on its books.   It has refused to
disclose its knowledge, or to give access to the records that con-
tain the information.   What can the court do otherwise, if
justice is to be done, than grant an order that will let in the
light and make manifest the truth?   If experience had not
already demonstrated the wisdom of legislation authorizing
such orders, here is an instance within its spirit and letter
alike, that would dissipate every doubt.

It is urged that the order has been granted without the pre-
requisite of an affidavit to the petition.   Some statutes, it may
be, have required that the basis for the issuing of an order
must be an affidavit and that otherwise the court would not
be called on to act?   The statute under discusion, § 927, code
1892, and laws of 1900, p. 136, contain no such prerequisite
and imposes no such limitation upon the power of the court
as to the granting of such an order.   In a North Carolina
case, on a similar statute, it was urged "that some basis should

be laid for the issuing of the order, by affidavit or otherwise; and to quote from the language of the supreme court in passing on the objection, is to answer completely the objection presented here, viz.: "But the present enactment has no such restrictions as have been mentioned, but is simple and unqualified, giving the court full power, on motion and due notice, to require the parties to produce books or writings in their possessions or control which contain evidence pertinent to the issue." *McDonald* v. *Carson,* 95 N. C., 377. But back of all this, the action of the court in granting such an order is not subject to review, being about a matter which is entirely discretionary. *Clyde* v. *Rodgers,* 87 N. Y. Ct. of App., 625.

Again, where a complainant has a direct interest in the profits and running of defendant's business, the *prima facie* case is presented entitling the complaint to an inspection, when necessary, or the books of account containing a record of the business, and to all information that can be derived from them; and it is only where it is apparent that the application is made in bad faith that such inspection should be denied. *Veiller* v. *Oppenheim,* 82 N. Y. Sup. Ct. (75 Hun.), 21; 6 Enc. Pl. 7, Pr. 816; 152 U. S., 168; 6 Enc. Pl. & Pr., 802; *Commissioners* v. *Lemly,* 85 N. C., 341; *Exchange National Bank* v. *Washita County,* 61 Fed. Rep., 190; *Gregory* v. *Chicago, Milwaukee & St. P. R. R. Co.,* 10 Fed. Rep., 529; *Ib., Kirkpatrick* v. *Pope Mfg. Co.,* 61 Fed. Rep., 46.

CALHOON, J., delivered the opinion of the court.

We do not consider the constitutionality of § 927 of the code, as amended by the act of 1900, p. 136, because, assuming it valid, the order for the inspection of the books, and the decree pro confesso and final decree following for $15,000, with interest, were unauthorized. The "good cause" required by the statute as a condition precedent to an order for production or inspection of books, etc., was not shown, and the showing made for the decree pro confesso was insufficient to warrant it, and

the allegations of the bill are too vague, indefinite, and uncer-
tain to justify a final decree. The act is very highly penal, and,
if to be upheld as valid, it would require an extraordinary state
of case to justify so extreme a measure as a pro confesso and
final decree for failure to produce books, etc. The act author-
izes the court to visit refusal to obey its order with the con-
sequence of a pro confesso, but it would require an extreme
case to maintain such exercise of discretion. Certainly this is
not such a case. The bill itself states the inability of com-
plainant to say how much she is entitled to, and prays dis-
covery. It was answered, and full discovery made, and much
testimony taken by depositions. Then complainant applied for
an order for an inspection of books, which was granted upon
the unsworn petition of her solicitor, which was not a suffi-
cient showing to justify it. Her claim is that, as a partici-
pant in the profits of the insurance company, she believes she
is entitled to a large sum—$10,000 or more. The amount is
purely conjectural. She does not even give the grounds of her
belief. The source of her information is not stated. No data
whatever are suggested. She asserts a claim, and seeks access
to defendant's record of its business covering twenty-three years
to ascertain if her claim cannot be maintained. The statute
was not designed to establish such practice. It was intended
to accomplish the proper purpose of enabling a complainant,
or plaintiff to secure the benefit of the showing of the books and
papers of the defendant in proper cases to promote the ends of
justice. The power conferred should be exercised with great
caution to avoid invasion of the rights of defendants. Such
caution was not observed in this case. We will not undertake
to define the state of case in which an order for inspection, etc.,
may be properly made. Each case must be determined by its
own facts. Suffice it to say that the power conferred by the
act is a very delicate one, and should never be exercised excep-
on good cause shown of the necessity for it to promote the ends
of justice, and there the terms imposed should carefully safe-

guard the rights of the party against whom the order is made. To permit the decree in this case to stand would shock our sense of justice.

The final decree and pro confesso are reversed, and the order for inspection of the books is set aside, and the cause remanded.