*713
 
 ST. PAUL, J.
 

 This is a- suit brought by the payee and original holder thereof, upon a joint and several promissory note signed by ' Aleide Delatte and Ramie Delatte as makers, for the sum of $2,214.44, with interest and attorney’s fees. There was judgment below
 
 in solido
 
 against both defendants, and Ramie Delatte alone appeals.
 

 I.
 

 The ease is clearly, succinctly, and correctly set forth in the “Statement of Facts,” annexed to the brief herein filed on behalf of plaintiff-appellee
 
 except
 
 as to that part of the
 
 second
 
 paragraph thereof which we have
 
 italicized,
 
 and which is merely a
 
 conclusion
 
 of counsel, and constitutes the very
 
 bone of conr tention
 
 in this case, to wit:
 

 Statement of Facts:
 
 After the World War, when trading in cattle was brisk and the profits large, Aleide Delatte embarked in that business with the financial backing of his father, Ramie Delatte.
 

 The plan adopted by father and son was this: Aleide, the son, would buy the cattle, and if he should be in need of ready money, he would borrow it on the solidary note of his father and himself. . As the father, Ramie Delatte, lived in Pointe Coupee parish and Aleide lived and carried on business in East Baton Rouge parish, when the two met and Aleide was in need of financial help, Ramie would sign a number of promissory notes in blank [payable to the Louisiana National Bank], and give them to Aleide to be filled out, signed and used by him for the purpose of obtaining the needed money. This money was generally [always] borrowed from the Louisiana National Bank,
 
 but it was a matter of no concern to Ramie Delatte from whom the 'money was obtained, just so the money was used in buying cattle. Thus Aleide was given a free hand in buying cattle and using these notes to raise money to pay for them.
 

 In the latter part ,of December, 1920, Aleide Delatte bought from J. L. Alford, the plaintiff, in this suit, a lot of cattle for a price exceeding $2,200, and gave Alford a ¿ote signed
 
 in solido
 
 by Ramie Delatte and himself. When this note fell due in the course of a few months, another solidary note of Ramie and Aleide was substituted for it.
 

 Some time after this, when Ramie Delatte learned that Alford held this note, he went out to the latter’s home in the Fifth ward of East Baton Rouge parish and asked to- see the note. After reading it he acknowledged that it held his signature, and did not, even by intimation, repudiate the note.
 

 When the note fell due and remained unpaid, Alford instituted this suit to enforce payment thereof. Then it was for the first lime contended that the note had not been given to Alcide to raise money to pay for cattle, but had been given to him to substitute for an indebtedness to the Louisiana National Bank; that the note was written on a blank note [form] of that bank,
 
 on which [the name of} the Louisiana Rational Bank was printed as payee;
 
 that the words “Louisiana National Bank” had been erased [canceled] by Aleide Delatte, and the name of J. L. Alford written in their place [as payee]; and that this constituted such an alteration of the note, as to release Ramie Delatte from liability as one of the makers. [The note shows, on its face, the cancellation and superscription as stated. Italics, and matter in brackets, ours.]
 

 II.
 

 The law applicable to the case before us is thus stated by the Supreme Court of the United States in Angle v. Northwestern Life Ins. Co., 92 U. S. 330, 331, 340, 23 L. Ed: 556, viz.:
 

 “Where a party to a negotiable instrument intrusts it to another for use as such, with blanks not filled up, such instrument, so delivered carries on its face an implied authority to complete the same by filling up the blanks; but the authority implied from the existence of the blanks would not authorize the person intrusted with the instrument to vary or alter the material terms of the instrument by erasing what is written or printed as part of the same, nor * * * to make any addition to the terms of the note; and if any such, of a material character, are made by such a party, without the consent of the party from whom the paper was received, it will avoid the note, even in the hands of an innocent holder.”
 

 See, also, cases cited in Rose’s Notes to page 342 of the official report; and 2 Corp. Jur. pp. 1223, 1224, §§ 91, 92.
 

 III.
 

 Therefore the sole and only questions involved herein are: Was it “a matter of no concern to Ramie Delatte from whom the
 
 *715
 
 money was obtained, just so the money was used in buying cattle?” and: Was Alcide Delatte “given a free hand in buying cattle' and using these notes to raise money to pay for, them?” In short: Was Alcide Delatte authorized to use these notes for tie purpose of obtaining money or credit from any one but the Louisiana National Bank, and to that end authorized to erase, or cancel, the printed name of the Louisiana National Bank, and substitute another as payee? And if not, was the
 
 substitution
 
 such a material alteration as avoided the note?
 

 IV.
 

 It may be true
 
 sometimes,
 
 that in borrowing money, whether for one’s self or for another, it is “a matter of no concern * * * from whom the money was obtained.” But we venture the opinion that Antonio would not have gone surety again for his friend Bassanio, if the creditor was once more to be Shylock. And also, where a man has a
 
 limited
 
 credit with a bank or individual (whether that limit be arranged for, or result only from his financial status), he may well be willing to lend
 
 Ms credit with that banlc or individual
 
 to another (knowing then full well' that the credit thus extended will not exceed such limited credit as he there has), without at the same time being willing
 
 to
 
 lend his credit to that other to any extent the latter may be able to use it.
 

 Therefore it may be, and often is,
 
 a matter 0† serious concern
 
 from whom the borrowed money is to be obtained; and hence “the change of a payee by substituting a different payee from, the one originally in the instrument is a material change and vitiates the instrument as against the parties not consenting thereto, unless it can be justified on some other principle [as in Levois v. Burguieres, 10 La. Ann. 111, and Ryan v. Springfield First National Bank, 35 N. E. 1120, 148 Ill. 349]. * * * ” 2 Corp. Juris, p. 1215, § 75.
 

 Accordingly, “any alteration which changes: * * * (4) the number or the relations of the parties; * * or the effect of the instrument in any respect [without the assent of all parties liable thereon], is a material alteration,” which avoids a negotiable instrument, except as against a party who has himself made, authorized or assented to the alteration, and
 
 subsequent
 
 indorsers. Act 64 of 1904, §§ 124, 125.
 

 But to cancel or erase the name of one payee and substitute that of another is clearly to introduce a new party to the instrument, and hence to alter the
 
 number
 
 of parties thereto and the
 
 relations
 
 of all the other parties to the former payee as well as to the new.
 

 . Hence to' do so is such a material alteration of the instrument as will avoid it as to all prior parties not assenting thereto. Broughton v. Fuller, 9 Vt. 373; Hoffman v. Planters’ Nat. Bank, 39 S. E. 134, 99 Va. 480; Stoddard v. Penniman, 108 Mass. 366, 11 Am. Rep. 363; Ryan v. Parker, 36 N. O. 89; Coal-gate International Bank v.' Mullen, 120 P. 257, 30 Okl. 547, Ann. Cas. 19130, 180, and note; Wilson v. Weis, 132 S. W. 841, 63 Tex. Civ. App. 255.
 

 V.
 

 For the rest, Ramie Delatte testified that Alcide Delatte had no authority from him to alter the printed name of the payee appearing on the notes when he signed them, or to negotiate them or borrow money upon them, elsewhere than at the Louisiana National Bank, the payee named therein. Joe Delatte, another son, testifies:,
 

 “We were told not to use them (the notes) for anything except the Louisiana National Bank.”
 

 And Alcide Delatte, the other defendant, testifies as follows:
 

 “Question: Did you ever give one of these notes, which your father had signed in blank, to any person or institution other than the Louisiana National Bank, except the one which you gave to Mr. Alford? Answer: No, sir.
 

 
 *717
 
 “Question: Where did he expect you to borrow the money on such notes? Answer: Prom the bank, until it got so tight that I couldn’t get it there.
 

 “Question:
 
 It is a fact,
 
 though, that
 
 he
 
 never at any time authorized you to give one of these notes to Mr. Alford in payment for these cattle? (Italics ours.) Answer: Yes, sir.
 

 Question: Did you talk to your father about the time, or at the time, you bought these cattle from Mr. Alford, about using him as an indorser or comaker on a note for that purpose? Answer: No, sir; not until way after the .note was given.
 

 “Question: Your father did not know he was on that note at all, then; did he? Answer: No, sir.
 

 “Question: Did your father authorize you at any time, as his agent, to take notes which he gave you, made payable to the Louisiana National Bank, and make them payable to anybody you wanted to as payee? Answer: No, sir; and he didn’t authorize me not to, either.
 
 There was not one word said about it one way or the other, at all.”
 
 (Italics ours.)
 

 All of which speaks for itself; and does not in any way, conflict with the testimony of plaintiff "and his wife, that “he [Ramie Delatte] said he signed a batch of notes for the boys to run their business on.” Which is just exactly what Ramie Delatte appears to have done; but, none the less, that “batch of notes,”
 
 all payable to the Louisiana national Banlc,
 
 was to be used only
 
 mth
 
 the Louisiana National Bank; and the use of them with any one else by erasing (canceling) the bank’s name as payee, and substituting (interlining) the name of another payee, was unauthorized; and hence imposed no obligation on Ramie Delatte, the appellant.
 

 Our conclusion is that the judgment below is erroneous and should be reversed.
 

 Decree.
 

 The judgment appealed from is therefore reversed; and it is now ordered that plaintiff’s demand against the appellant, Ramie Delatte, be rejected at his cost in both courts.
 

 BRUNOT, X, recused.