HOLMES *et al. v.* FORD.

(Division B.   Oct. 18, 1937.)

[176 So. 524.   No. 32802.]

M. S. McNeil, of Hazlehurst, and Stevens & Stevens, of Jackson, for appellants.

Geo. R. Nobles and L. Barrett Jones, both of Jackson, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On March 22, 1932, appellee was indebted to H. B. Holmes, one of the appellants, on open account, in the sum total of $1,252.77. On that date appellee executed a note and deed of trust to said appellant, H. B. Holmes, to evidence and secure said indebtedness, and to secure further advances of supplies and merchandise to be made by H. B. Holmes to appellee during the years 1932 and 1933. According to the findings of fact, which are supported by sufficient evidence, although disputed by appellants, the note and deed of trust were altered by H. B. Holmes, after delivery to him and without the knowledge or consent of appellee; the alteration consisting of the erasure of the name H. B. Holmes, as payee and beneficiary, and the insertion of the name L. M. Holmes, as

the apparent payee and beneficiary. There was no actual fraud or corruption in the alteration, but was resorted to as a cheap and convenient mode, as appellants thought, to transfer the debt and security to L. M. Holmes for a debt due to him by H. B. Holmes.

During the month of January, 1936, appellant L. M. Holmes through the trustee, gave public notice of his intention to sell the property described in the deed of trust, the sale to be made on February 8, 1936; and on January 31, 1936, appellee filed his bill to enjoin the sale, upon the ground that because of the material alterations aforementioned the note and deed of trust were nonenforceable and void. Upon the final hearing the bill was sustained and the injunction was made perpetual.

As to the legal effect of the alterations, we need only to refer to what was said in Upton v. Bush, 141 Miss. 660, 107 So. 284: A change of the name of a payee in a promissory note without the consent of the maker is a material alteration of the instrument and renders it invalid as to the maker; and whether the change was one of benefit or injury to the maker is not the test. As stated in the cited case, the test is whether the alteration has materially affected the identity of the instrument; wherefore, the rule applies to mortgages as well as to notes. 3 C. J. S. Alteration of Instruments, page 940, section 30.

Appellants say, however, that appellee ratified the alteration after having received knowledge of it; and appellants point particularly to a check for $54.25, drawn by appellee on June 15, 1932, payable to H. B. Holmes and bearing the notation, made by appellee, "Apply on note." The only dependable evidence as to when appellee first knew of the alteration was in his own testimony that it was some time in the summer of 1932. Upon the issue of ratification, appellants had the burden of proof; and proof that appellee knew of the alteration some time in the summer of 1932 is not enough to show that he

knew it as early as the middle of June in that summer, in which connection it may be noted that we have construed the testimony of the witness according to the common vernacular, laying aside the consideration that, technically, summer did not begin in 1932 until June 21st.

. Other than the payment above mentioned, there is sufficient evidence to support the finding by the chancellor, as is the import of his decree, that all payments made after the execution of the note and deed of trust were made to H. B. Holmes for current purchases of supplies furnished by him after the date of the delivery of said instruments. No payments were, at any time, made to L. M. Holmes, nor did he furnish any of said supplies. So far as appellee was concerned, L. M. Holmes was and remained an entire stranger throughout the entire course of the business, and down to the time, early in 1936, when L. M. Holmes, through the trustee, gave public notice of an intended sale of the mortgaged property, whereupon, as already stated, appellee filed the bill in this case to enjoin the sale.

The procedure last mentioned is made the basis of a principal contention by appellants that appellee cannot properly maintain his said bill, because he has not done equity; that is to say, the insistence is that appellee must first pay or else tender with his bill the amount of the debt, with interest. There are several difficulties which this contention encounters, but we do not find it necessary to go further into it than to consider the following interrogatory: To whom of the two appellants shall such a payment or tender be made? Not to L. M. Holmes, for admittedly it was not to him that appellee owed the original debt; he advanced not a cent, either in money or in property, to the debtor at the time, and in consideration of the execution of the instruments; nor did he do so at any time afterwards, and he could not come into any sort of privity, legal or equitable, as a cred-

itor in respect of a pre-existing debt by illegal device of an alteration of instruments. And as to the other appellant, H. B. Holmes, he took the positive position, not only in his letters to appellee previously to the filing of the bill herein, but also in his answer, that the instruments were not altered after execution, but were in their present condition when signed and delivered by appellee, and that not he, but L. M. Holmes is the owner of the debt and the security therefor, which introduces the obvious proposition that a party cannot demand a tender of something to which, as averred in his previous correspondence and in his own pleadings, he is not the rightful claimant.

The appellants might have raised the issues, which they have attempted to work out under the rules respecting tender, by filing a cross-bill praying in the alternative that if the court should find that the instruments were altered subsequently to their execution, then, in that event, the deed of trust should be foreclosed according to its original tenor; but no cross-bill was filed. And because there was no cross-bill for any affirmative relief of any kind, the court was not empowered to render personal decree for the amount of the debt as if on open account. We do not, in what we have above said, express any opinion whether, had a cross-bill been filed, appellants would have been entitled to relief either upon the deed of trust according to its original tenor or upon the open account. All we decide is that those questions could not be put in issue in the present case except by cross-bill.

In the connection last mentioned, we note the complaint by appellants that the decree canceled not only the note and deed of trust, but also the debt itself. We do not so interpret the decree as it is written. Moreover, a decree is confined within the material averments of the pleadings. The bill here before us expressly admits the original debt and contains no averment of actual fraud or

corruption, so as to plainly place before the court the issue of the cancellation of the debt itself, nor does the bill specifically so pray. Unless the language of a decree plainly runs beyond the stated limits, we will construe the language as remaining within such limits.

Affirmed.