594 So.2d 610 (1992)
John Gerry DAVIS
v.
NOBLITT & CAPERS ELECTRIC COMPANY, INC.
No. 89-CA-43.
Supreme Court of Mississippi.
February 5, 1992.
*611 Jack Parsons, Parsons & Taylor, Wiggins, for appellant.
Robert P. Krebs, Krebs & Williams, Pascagoula, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
Here we are asked to determine whether the chancery court correctly resolved a dispute between joint venturers, who chose not to reduce their agreement concerning their relationship to writing. Applying the appropriate standard of review, we find that the chancellor was not manifestly wrong, except for one small detail concerning responsibility for the fees for an accountant/expert witness. We, therefore, affirm as to all, except that determination, and as to the accountant's fee, we reverse and render.

I
This case comes to us from the Chancery Court of Jackson County. There, the Hon. Robert Oswald found that an oral joint venture agreement existed between John Gerry Davis (Davis) and Noblitt & Capers Electric Company, Inc.[1] (Noblitt) for the purpose of repairing buildings damaged by Hurricane Elena in 1985. There is a dispute between Davis and Noblitt regarding the distribution of funds acquired by the joint venture, which existed for a period of six and a half months.
In response to five questions which were submitted by the parties for resolution, the lower court found the following:
(1) Davis was not to receive wages for his work on the joint venture, in addition to receipt of a share of profits. Davis should not receive payment for the hours spent on endeavors for the joint venture.
(2) The electrical work in the sum of $13,245.07, performed during the course of the joint venture, should not be included in the joint venture and should, therefore, be deducted from total amount of earnings.
(3) The parties did agree that the insurance and overhead would be deducted from the gross receipts. The overhead expense of both venturers should be deducted from the gross receipts.
(4) Terry Jones, the accountant, detailed the overhead expenses of Noblitt & Capers, Inc., but failed to do so for Davis. As a result, Jones performed his accounting services with a bias in favor of Noblitt, his regular customer. Equity and *612 good conscience require that both parties be reimbursed as a reasonable overhead, as they agreed.
(5) Since each member of the joint venture benefitted from the accounting of Jones, the accounting expense of $2,300.00 should be allowed.
Aggrieved, Davis appealed to this Court for review of the chancellor's determination of the accountant's fee, electrical work and overhead issues. By way of cross appeal, Noblitt contends that, by accepting payment of the judgment rendered by the chancellor, Davis has waived his right to appeal.

II
The undisputed evidence reveals that, after Hurricane Elena, Davis came to the coast to do clean-up work. At some point, he met with Noblitt and Capers and there was an agreement for a joint venture to do contracting work. Davis supplied equipment and labor, Noblitt supplied financing, and profits were to be split. At this point, the parties diverge.
Davis testified that the agreement was for a two-way split; Davis and the Noblitt corporation. Noblitt and Capers claim that the agreement was for a three-way split. All of the documented involvement of Noblitt and Capers with the work performed by Davis was in the corporate name.
Davis claimed that overhead was never mentioned, and that the agreement did not contemplate that either operation would tax the joint venture for overhead. He claimed that no weekly salary for himself was a part of the agreement, and that there was no agreement that the electrical work done on jobs worked by the joint venture was excluded. Noblitt and Capers testified contradicting Davis' version.
Terry Jones, CPA, rendered an accounting regarding the joint venture in March 1987. It is unclear how he came to be engaged for this service. He testified that he did regular accounting work for Noblitt. Jones testified that the total fee for his services was $2,300. The record does not reflect whether that was the charge for an accounting, or whether it included a charge for his testimony. At trial, he was considered by Noblitt to be its expert. He testified that Noblitt told him that profits from the joint venture were to be split three ways, and that his calculations were based on this assumption. Jones calculated Noblitt's overhead expense, but made no attempt to calculate that of Davis.

III
The first question to be resolved is that raised by Noblitt concerning the propriety of this appeal. Noblitt asserts that Davis cannot appeal from a part of a judgment, but must appeal the whole judgment, or not at all. It further contends that, by accepting, endorsing and negotiating a check in the amount of the July 19, 1988, judgment of $16,006.39, Davis has waived his right to an appeal. Noblitt cites the cases of Adams v. Carter, 92 Miss 579, 47 So. 409 (1908), and Madison County v. City of Canton, 171 Miss. 547, 158 So. 149 (Miss. 1934) to support his contention that Davis cannot appeal from a judgment once he has accepted that judgment amount.
In Adams, the plaintiff recovered judgment in circuit court for a specified sum awarded in an action at law for default in the payment of taxes collected. After the judgment was paid, he appealed the entire judgment. This Court, noting the distinction in this state between courts of equity and those of law, held that because the court was without power to affirm in part and reverse in part a judgment at law, the appeal had to be dismissed. Adams is inapplicable here in that the case at bar involves a decree in equity. Decrees in equity were specifically distinguished in Adams, citing Meaders v. Gray, 60 Miss. 400, 45 Am.Rep. 414 (1882), Id. 92 Miss. at 590, 47 So. 409. Madison County also involved a judgment of the circuit court and is distinguishable for that reason.
Davis relies on Currie v. Bennette, 108 Miss. 854, 67 So. 484 (1914). There, citing Meaders, the Court held that where a chancery court entered a decree settling several distinct controversies, appellant could accept the benefit of the judgment and maintain *613 an appeal. Currie is clearly applicable here. The three issues raised by Davis on this appeal are certainly distinct and amenable to separate resolution. Whether the decree is affirmed or reversed with respect to Davis' contentions, he is entitled to at least the amount awarded and already paid. Id. 108 Miss. at 856, 67 So. 484.
Moreover, the Adams' premise, the indivisibility of judgments at law, was severely criticized, if not buried, in Yazoo & M.V.R. Co. v. Scott, 108 Miss. 871, 892, 67 So. 491, 495 (1914). Speaking of Adams, we said that "[t]he nonexistence of this power [to reverse in part and affirm in part] was assumed by the court apparently without investigation; certainly without citation of authority." Id.
Finally, we have recently made it clear that the acceptance of the fruits of a judgment at law does not preclude appeal. Investors Property Management, Ltd. v. Watkins, Pitts, Hill & Associates, 511 So.2d 1379, 1383 (Miss. 1987). We noted that where a judgment creditor accepts payment and then appeals, he holds the funds subject to any judgment which is rendered on appeal or possible cross appeal. Id. Noblitt's cross appeal is clearly without merit. We turn now to the substance of Davis's appeal.

IV
The parties agreed that they had engaged in a joint venture, and the lower court correctly found that to be the case. As such, it is not necessary to go into an intricate discussion of whether a joint venture existed. Under Mississippi law, a "joint venture" is an enterprise engaged in by several persons jointly to carry out a single business enterprise for profit, for which purpose the persons involved combine their property, money, efforts, skill and knowledge. Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942); Boxwell v. Champagne, 229 Miss. 355, 91 So.2d 256 (1956); Hults v. Tillman, 480 So.2d 1134 (Miss. 1985); Koval v. Koval, 576 So.2d 134 (Miss. 1991). A partnership and joint venture are virtually the same, except that a joint venture is thought to have more limited and circumscribed boundaries. The two may be created in the same ways. See gen. Carmichael v. Agur Realty Co., Inc., 574 So.2d 603 (Miss. 1990) citing from Hults v. Tillman, 480 So.2d at 1141. "Each may exist as an oral or written, express or implied agreement among its members." See e.g., Crowe v. Beard, 394 So.2d 899, 902 (Miss. 1981). Where, as here, the agreement is oral, it is left to the court to resolve disputes based on the oral and documentary evidence presented, applying the preponderance of the evidence standard. Foster v. Copiah County Co-Op., AAL, 246 Miss. 218, 148 So.2d 702, 708 (1963).

V
Davis' first assignment of error relates to the cost of accounting for the joint venture. He asserts that because Terry Jones' testimony was biased against him, he should not be required to pay half of his charges for the testimony and preparation. He contends, furthermore, that Jones' testimony was useless, since his reports were prepared based on the assumption that the joint venture was a three-way proposition between Noblitt, Capers and Davis. Davis submits that this cost is an expense to be borne exclusively by Noblitt.
The chancellor found that Jones did indeed perform his services in a biased manner. Nevertheless, he concluded that the cost of the accounting for the joint venture was a reasonable expense and was necessary for a full exposition of the economics of the joint venture.
It is true that the necessary and reasonable costs and expenses incurred in promoting a joint venture are a first charge on its proceeds. Boxwell v. Champagne, 229 Miss. 355, 366, 91 So.2d 256 (1956). A chancellor's determination whether disputed charges are necessary and reasonable will not be disturbed where there is substantial evidence to back the findings. Id.; Jim Murphy & Associates, Inc. v. LeBleu, 511 So.2d 886, 894 (Miss. 1987). The problem is that, here, there is no substantial evidence to support the finding of the chancellor. Jones was treated throughout as an expert witness for Noblitt. If he *614 were engaged for any purpose other than to compute the appropriate overhead charges for Noblitt and Capers, the record does not so reflect. While he may have given testimony which the court found helpful, he was not engaged to render services in furtherance of the joint venture and his fees should not be charged to it.

VI
Davis contends that the lower court erred when it found that the electrical work performed on the joint venture jobs was outside the joint venture and excluded the amount of $13,245.07. The chancellor found that the electrical work was outside the joint venture because it was work that Noblitt and Capers Electric had or would have had, regardless of the existence of the joint venture. At trial, Capers testified that at the initial meeting, all three agreed to form a venture to do the general contracting work, excluding the electrical work, because that is not included in general contracting work. Davis did not dispute this at trial, but, in fact, testified that the electrical work "was not going to come into play."
In his brief before this Court, Davis admits that he knew that the electrical work was to be deducted, however he now contends that because Noblitt was in the business of doing electrical work, this was his contribution to the joint venture. Noblitt did much more than contribute electrical work, he supplied the money for the venture, as well as skill and knowledge. Davis knew when he entered into the agreement that Noblitt was an electrical company. Yet, he waits until after the judgment to assert that the electrical work should not have been excluded from the profit. This assertion is contrary to the agreement as established by undisputed testimony at trial. "Joint adventurers are bound by their agreement, which agreement must exist in order to effect the joint venture." See e.g. Tansil v. Horlock, 204 So.2d 457 (Miss. 1967).

VII
Davis submits that there was not an agreement that overhead would be deducted from the profits of the joint venture. Based on the testimony at trial, the lower court found that the parties did agree that overhead would be deducted from gross receipts. From the record, it seems that the trial court based its findings on Noblitt's testimony that, although no amount was given as to overhead being deducted, he, Davis and Capers agreed that they were going to take out the costs, taxes, insurance and overhead. There was also testimony from Davis' wife concerning the amount of overhead expenses her husband incurred and from Jones, regarding the amount of overhead expenses Noblitt incurred. The finding of the Chancery Court on this point as to both the deductibility and the amounts of overhead was amply supported by the evidence and will not be disturbed.

CONCLUSION
For the foregoing reasons the judgment of the chancellor is affirmed in all respects, save the fees charged by the accountant, Jones. We therefore reverse and remand for entry of judgment in conformity with this opinion.
AFFIRMED AS TO CROSS-APPEAL; AFFIRMED IN PART AND REVERSED IN PART AS TO DIRECT APPEAL AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] The defendant company is owned by Henry Noblitt and Terry Capers. At trial, Noblitt testified that he and Capers individually entered into the joint venture with Davis. Davis contended at trial that the joint venture was a two-way deal. The chancellor agreed with Davis' assertion, finding that everything was either in Davis' name or that of Noblitt & Capers, Electric, Inc. There was no documentary evidence supporting the contention that Capers and Noblitt were involved as individuals, each with a one-third share.