ROBERTSON, Presiding Justice,
for the Court:
Larry D. Crowe appeals from the decree of the Chancery Court of Warren County ordering him to pay to Jerry Beard the sum of $195,000.00, as a realtor’s commission in the sale of the Morrissey tract on Eagle Lake (6500 acres) to Crowe, by the Merchants National Bank of Vicksburg, Trustee under the Last Will and Testament of Josephine R. Morrissey.
In November, 1978, appellant Crowe con-tácted his friend and farming associate, Johnny Johnson of Valley Park, Mississippi, about the possibility of finding large tracts of land available for purchase. Johnson, in turn, contacted Jerry Beard, a real estate broker in Vicksburg, about obtaining information on a large tract of land bordering Eagle Lake and known as the Morrissey tract. Beard contacted Mrs. Ethel Morris-sey Towne, a daughter of Josephine R. Mor-rissey, and a beneficiary under the trust established by her mother.
Mrs. Towne advised Beard that the sale price was $5,000,000 net to the trust. She also told Beard that they wanted $1,000,000 down payment, and would finance the balance. When asked about a realtor’s commission, Mrs. Towne advised that the sale price was net to them. Beard told her that he would add his commission to the sale price. Mrs. Towne gave Beard permission to show the property to prospective purchasers.
Crowe, Johnson and Beard subsequently met at Johnson’s home in Valley Park. Beard relayed the information he had received from Mrs. Towne and advised Crowe and Johnson that he wanted a 10% commission which would boost the sale price to $5,500,000. Crowe asked Beard if he would take $200,000 as his commission instead of 10% and Beard agreed that he would. Crowe suggested leaving the sale price at $5,500,000, and that they divide the $500,000 among the three of them in this way: $200,000 to Jerry Beard, $200,000 to Larry Crowe, and $100,000 to Johnny Johnson.
Beard told Crowe that, under Mississippi law, he could not pay them a finder’s fee, that he would agree to a $200,000 commission to him but that they must get their finder’s fee any way they could.
During November and December, 1978, and January, 1979, there were several conferences among Crowe, Johnson and Beard, and on two occasions they negotiated with an Aetna Life Insurance group of Larry DePriest and Jim McGee, with whom Crowe had dealt before. After a second meeting with the Aetna group, DePriest and McGee advised them that they were not interested because the tract of land was not large enough. Thereafter, Crowe used Beard to' gather further information, prepare plats, secure aerial surveys and arrange conferences with the Morrissey heirs. Crowe tried to secure financing to buy the Morris-sey tract himself. On Christmas Day, 1978, Larry Crowe and his brother, Murry Crowe, conferred and flew over the Morrissey tract in an attempt to get the exact boundaries in mind.
Larry Crowe went dead on his contacts with Beard, and Beard finally called him by phone at his Louisiana home to find out the status of the sale. During the conversation, Beard advised Crowe that he had another prospective purchaser, Dan Shipp of John Hancock Life Insurance Company. Crowe told him not to show the property because he, Crowe, was doing everything he could to buy the Morrissey tract, and that if he showed the property to somebody else he, Crowe, wouldn’t feel like he owed Beard a commission.
At the trial, Crowe denied telling Beard this, but did admit that he offered Beard a lake front lot on Eagle Lake if Beard would not show the property to anyone else, and if his efforts to purchase the property were successful. At Crowe’s instance, Beard ar *901 ranged a meeting with Wren Way, the attorney for the Morrissey trust, on January 3, 1979. On January 3, Beard picked up Larry Crowe at the airport and after the meeting in Way’s office Beard bought lunch for Larry Crowe, Murry Crowe and Chuck Little, the Crowes’ CPA and tax attorney.
Although several meetings were held after the January 3rd meeting to finalize the sale and work out all the tax angles to the benefit of the sellers and buyers (Larry Crowe and Murry Crowe), Beard was not advised or invited to any of them. The sale of the Morrissey tract to Larry D. Crowe and Claude Murry Crowe was closed on February 19, 1979. When Larry Crowe refused to pay Beard his $200,000 commission, Beard sued both Larry and Murry Crowe in the Chancery Court of Warren County, averring an oral contract between Larry D. Crowe and Jerry Beard wherein Crowe promised to pay Beard a $200,000 commission in the event that negotiations were successful and Crowe, or Crowe and others, purchased the Morrissey lands. Beard averred that the purchase by the Crowes was the direct result of services rendered by him as a real estate broker, and that he, Beard, was the procuring cause of the sale and purchase. The Crowes answered the averments of the bill of complaint with a general denial.
After a full trial, the court sustained a motion to dismiss Claude Murry Crowe as a defendant. The court, on February 20, 1980, rendered its “Judgment Decree” wherein it found, among other things:
“Crowe admitted in his deposition and testimony that he anticipated acquiring an interest in the Morrissey tract similar to an undivided interest in a Louisiana tract he had worked with the same Memphis group [Aetna] he had in mind as prospective purchasers. There was no discussion at this meeting whether Crowe, or any other person named or group named was the prospective purchaser. Crowe asked Beard to get information, aerial maps, descriptions, amount of open land, et cetera, as well as details of the Morrissey offer to finance part of the purchase price, and permission to go on the land.
Beard met with Mrs. Towne and her sister Mrs. Griefield, another of the Mor-rissey grande dames, who gave him some of the information, permission to go on the premises, and advised the Morrisseys would finance $4 million at 9V2 percent for 20 years.

Sometime about Thanksgiving, Crowe told Beard he wanted to talk to the Mor-rissey representative face to face. Beard arranged a meeting with Mrs. Towne, Mrs. Griefield, Johnson, Crowe and himself for December 19th. At this meeting the sales price was confirmed, there was talk about the financing and the Morris-seys again stated they would not pay the relator’s commission. According to Mrs. Towne’s testimony, Crowe told her Beard would be his problem; according to Beard, Crowe said he would take care of the realtor’s fee.

About this same time, Beard was in contact with a realtor named Shipp, who had a prospect for the Morrissey tract. Beard advised Crowe of this, and Crowe told him that if he showed the tract to that prospect, he wouldn’t feel he owed Beard any commission. After this conversation Beard did not show Shipp the Morrissey property.
On Christmas day, Larry Crowe talked with his brother, Claude Murry Crowe, also a farmer, about the two of them buying the Morrissey Plantation and they flew to look at it.
Beard picked up Larry Crowe on January 3rd at the Vicksburg Airport, and drove him to Beard’s office, where they joined up with Claude Murry Crowe, their accountant, and proceeded to the meeting with the Morrisseys at Mr. Way’s office.
There, the Crowes expressed their interest in purchasing the property, details of taxes, financing, timber cutting, et cetera were discussed.

*902 Larry Crowe and Claude Murry Crowe purchased the plantation, after some extensive legal work, and adjustment in the price, et cetera, for tax purposes, on terms and conditions compatible with the information provided by Beard.
Larry Crowe made several references in his testimony to an agreement or ‘joint venture’ between himself, Johnson and Beard. However, a joint venture can only exist as either an express or implied contract between the members thereof. Such a definitive agreement did not exist between the parties according to Beard or Johnson.
The prime function of a real estate broker is to bring buyer and seller together in the market place, which is precisely what Beard did. Crowe expected from the beginning to obtain an interest in the property and develop and farm it, which is precisely what Crowe did.”

Therefore, the Court finds that there was an oral contract for a commission between Beard and Larry D. Crowe, and further finds as a fact that Beard was the procuring cause of the sale.”
Crowe has assigned as error:
I
The Decree of Court is manifestly contrary to both the law and the evidence.
II
The Court erred in finding that a valid, binding contract existed between the parties requiring Appellant to pay Appellee a real estate commission.
III
The Court erred in failing to find that a joint venture existed between Appellant and Appellee and another, and that said venture failed and was abandoned by the parties.
IY
The Court erred in finding that Appel-lee was the efficient, procuring cause of the sale.
V
The Court erred in finding that Appel-lee, Beard, fully performed a contract requiring the said Beard to both negotiate and procure the purchase and sale of certain lands, which performance would entitle Appellee to a fixed and agreed commission of $200,000.00.
Crowe vigorously contends that the court erred in failing to find that a joint venture existed between him and Beard, and that the joint venture failed and was abandoned by them. Joint venture, as well as a failure and abandonment thereof, is an affirmative defense, must be pled and must be clearly and convincingly proved either by direct or circumstantial evidence. Crowe did not plead a joint venture; neither did he plead a failure nor abandonment thereof. In McCartney v. McKendrick, 226 Miss. 562, 85 So.2d 164 (1956), this Court said:
“In the case of Sample v. Romine, 193 Miss. 706, 8 So.2d 257, which is, and ought to be, one of the leading cases in the jurisprudence of this country, as to the nature of the relationship of joint adventurers, and as to the obligations of one member of the adventure to the other or others, the Court said: ‘The relationship between the joint adventurers is fiduciary in character and imposes upon all the participants the utmost good faith, fairness, and honesty in their dealings with each other as respects the enterprise....

“The burden was upon the appellee McKendrick to establish his affirmative defense of an abandonment by clear, decisive and unequivocal evidence. [Citing authorities]. In the Newell case this Court said: ‘It is well established that an abandonment must be made to appear affirmatively by the party relying thereon, and that he has the burden to prove the same by clear, unequivocal and decisive evidence.’ ”
*903 226 Miss, at 575, 579, 85 So.2d at 168-69, 170.
We are of the opinion that there was substantial evidence supporting the court’s findings of fact and conclusions of law, and that the court correctly adjudged that there was no joint venture, that an oral contract existed between Larry Crowe and Jerry Beard, that Beard was the procuring cause of the sale to Crowe and that Larry Crowe owed Jerry Beard $195,000 as a fair and reasonable commission according to the contract between them.
The decree of the lower court is, therefore, affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE and HAWKINS, JJ., concur.
BOWLING, J., takes no part.