375 So.2d 774 (1979)
James A. SANDERS, Jr.
v.
Doyle L. DANTZLER.
No. 51494.
Supreme Court of Mississippi.
October 10, 1979.
Stephen L. Beach, Jackson, for appellant.
McKibben & Associates, Dale H. McKibben, Jackson, for appellee.
Before ROBERTSON, BROOM and COFER, JJ.
ROBERTSON, Presiding Justice, for the Court:
Appellant, James A. Sanders, Jr., appeals from an order of the Circuit Court of Rankin County denying any recovery in his suit against appellee, Doyle L. Dantzler, to recover damages on an alleged breach of an oral contract for the sale and purchase of a Chevron service station.
Sanders' declaration was in two counts. Dantzler entered a plea in bar to both counts. The court treated the plea in bar to Count I as a demurrer, and dismissed Count I on the ground that it was based on an oral contract which was prohibited by the statute of frauds. After Plaintiff Sanders had presented his case on the second count, the court dismissed the case. The judgment of dismissal states in part:
"The Court is further of the opinion that Motions No. 2 and 3 on behalf of the Defendant should be considered together and that they should be sustained on the ground that the alleged oral contract was too indefinite as to terms; that the evidence on behalf of the Plaintiff was insufficient to show that a valid enforceable contract had been entered by the parties; and that even considering such contract had been entered, there was insufficient evidence as to damages to support a reasonable damage award; that is, *775 that the damages were too remote and speculative."
Sanders assigns as error that:
I. The trial court erred in applying the statute of frauds to the entire oral contract.
II. The trial court erred in dismissing the second count. The court should have applied the doctrine of promissory estoppel.
III. The trial court erred in sustaining the defendant's objection to the plaintiff's evidence of the net worth and earning capacity of his business.
Sanders testified that he leased a service station at 1015 East Northside Drive, Jackson, Mississippi, from Chevron Oil Company on April 1, 1973, had continuously operated the station at a profit and in April, 1978, signed a renewal of his lease thereby extending it for three years, that is, until March 31, 1981.
In early 1978 Sanders began negotiating with Dantzler to sell him his service station. Sanders testified that the negotiations continued until early May, 1978, when Dantzler came to his service station one Saturday morning to further discuss a possible sale. Sanders testified that after further discussions Dantzler agreed to pay him $11,000 for the station, the unexpired portion of his lease and all accessories in the station. Sanders further agreed to work with Dantzler for several weeks assisting him in learning how to operate the station and in meeting Sanders' regular customers.
Sanders contacted Larry Johnson, Chevron's representative, to arrange for the transfer of the station to Dantzler. Johnson advised Sanders that he could not assign the lease or sublet the station, but would have to cancel his lease before Chevron could even consider an application of Dantzler for a new lease. On May 9, 1978, Sanders signed a release, releasing and canceling his lease (which had just been extended for three years) as of May 31, 1978, in order for Dantzler to apply for a new lease.
The written cancellation signed by the lessor, Chevron U.S.A. Inc., and the lessee, James A. Sanders, Jr., recited:
"For valuable consideration, receipt of which is acknowledged, and by mutual consent and agreement of the Lessor and Lessee, the aforementioned contract form is hereby canceled, terminated and declared to be of no further force or effect, as between Lessor and Lessee, effective from the 31st day of May, 1978, and neither party shall reserve or have any recourse or claim whatsoever on the other party by reason of the former existence of said contract or this cancellation and termination thereof."
Upon learning that Dantzler had been approved by Chevron for a new lease, Sanders contacted Dantzler and asked him when he wanted to come and take over the station. Sanders told Dantzler that all he needed to do was write him a check and take over the station, but, according to Sanders, Dantzler said at that time he had not agreed to pay $11,000.
Sanders testified that he told Dantzler if he had changed his mind to please call Larry Johnson, the Chevron representative, and let him know; and that he, Sanders, would continue to operate the station.
Sanders stated that he continued to operate the station until May 31, 1978, and would have kept on operating it but for the fact that Chevron refused to deliver any more gas or accessories to him, because Doyle Dantzler had been approved for a new lease, and Sanders had signed the cancellation and release of the remaining three years on his lease. When Sanders could get no more gas or accessories from Chevron, he locked up the station, leaving his tools and accessories in the station, and kept the keys. Sanders further testified:
"Q Why, I will repeat, why did you surrender your dealership contract and lease, that is voluntarily cancel it?
A So Mr. Dantzler could put in an application, in other words, to sell the service station, so Mr. Dantzler could fill out an application and so Chevron would accept the application.

*776 Q What if any, bearing did his promise to you eleven thousand dollars for the station have on your motivation to cancel it?
A That's the only reason I signed it.
Q You would not have done so otherwise?
A No.
A Did you get any consideration at all then for the release of your cancellation of your dealership and lease?
A No."
While we agree that the contract was not divisible so that the statute of frauds could apply to that part of the contract for the sale of goods, but not apply to that portion of the contract dealing with the sale of non-goods, we are of the opinion that the doctrine of promissory estoppel applies, under the peculiar facts of this case, and that Dantzler would be estopped from asserting the defense of the statute of frauds.
Sanders' testimony is undisputed that he executed a written release and cancellation of the remaining three years of his lease solely because he had contracted to sell to Dantzler and Chevron would not allow him to assign the lease nor sublet the station, but required him to cancel before Chevron would even consider Dantzler's application for a new lease. Sanders acted to his detriment in giving up a profitable service station business, and he did this because he was led to believe by Dantzler that he (Dantzler) had agreed to purchase the unexpired portion of his (Sanders') lease, his stock of accessories, and the goodwill he (Sanders) had built up over the years at that location.
The general rule concerning estoppel and its application to the statute of frauds is well stated in 73 Am.Jur.2d, Statute of Frauds, section 565, p. 203:
"It is universally conceded that the doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute of frauds. As is often said, the statute of frauds may be rendered inoperative by an estoppel in pais. Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds. This is based upon the principle established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme." (Emphasis added).
Mississippi applied this general rule to estop a party from pleading a statute of frauds defense in Martin v. Franklin, 245 So.2d 602 (Miss. 1971). In Martin, two property owners had made an oral agreement to exchange tracts of land. Subsequently the plaintiff built a house on the tract that he was to get and only when the house was almost completed did the defendant assert title to the land. This Court held that the defendant, who had entered into an oral agreement to exchange lands, knew that the plaintiff was building his house on the tract that he would get under the agreement, could not sit idly by until the plaintiff was almost through, and then assert that the oral contract was void because of the statute of frauds. By his promise and conduct he would be estopped from asserting such a defense.
In Brewer v. Universal Credit Company, 191 Miss. 183, 192 So. 902 (1940), this Court applied the doctrine of promissory estoppel and defined it in this way:
"Wherefore, there arises a situation proper for the application of the principle embodied in Section 90, Rest. Contracts, that `A promise which the promisor should reasonably expect to induce action for forbearance of a definite or substantial character on the part of the promisee and which does induce such action and forbearance is binding if injustice can be avoided only by the enforcement of the promise,'  which is simply a concise *777 statement of the modern doctrine of promissory estoppel. Lusk-Harbison-Jones v. Universal Credit Co., 164 Miss. 693, 698, 145 So. 623; 1 Williston on Contracts (Rev.Ed.) Secs. 139, 140; 19 Am. Jur. pp. 675-660; Fried v. Fisher, 328 Pa. 497, 196 A. 39, and the annotations thereto in 115 A.L.R. pp. 152-162." 191 Miss. at 191, 192 So. at 904.
This doctrine was also applied in Martin v. Dixie Planing Mill, 199 Miss. 455, 24 So.2d 332 (1946).
In the case at bar, Dantzler entered into an oral contract to purchase Sanders' Chevron service station for $11,000; as verified by the testimony of Martin, Sanders' employee. Relying on this oral contract, Sanders contacted the Chevron representative and made arrangements to cancel his lease which still had three years to run, so Dantzler could apply to Chevron for a new lease. Sanders relied to his detriment on Dantzler's promise and agreement when he executed a written release of the remaining three years of his lease with Chevron, thus giving up a profitable service station business and his means of earning a livelihood. In our view, Dantzler should now be estopped from pleading the statute of frauds to avoid his solemn promise to purchase the station.
The case at bar is clearly distinguishable on its facts from Thomas v. Prewitt, 355 So.2d 657 (Miss. 1978) and Anderson Construction Co., Inc. v. Lyon Metal Products, Inc. 370 So.2d 935 (Miss. 1979) where we declined to apply the doctrine of promissory estoppel.
The last question to be answered is:
Did the trial court err in not admitting evidence of the past earnings of Sanders' Chevron station?
We think the court did err in this respect. In an appropriate case, and we think this is one, one way to show damages (the loss of future profits) is to introduce evidence of past profits.
"Exactitude in a jury verdict is not always required, nor should the difficulty of ascertaining damages bar the suit." Travelers Indemnity Company v. Davis Wholesale Drug Co., 234 So.2d 604, 605 (Miss. 1970).
Here, although the station's monthly operating statements do not provide an exact measure of damages, they would provide the jury with some guidelines for determining the damages Sanders suffered when he lost completely his service station business for the remaining three years of his lease.
In a suit for breach of contract seeking damages for loss of future profits, the Court in Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 179 So. 363 (1938), allowed proof of profits in previous years to be introduced into evidence as a basis for assessing damages for future loss. There the business was an established one in operation for seven years prior to the breach. Here Sanders' station had been established and operating since 1973, and introducing evidence of past profits as indicated in the monthly operating statements would provide an appropriate basis for estimating loss of future profits.
For these reasons, the judgment of the trial court is reversed and this cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.