**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-CA-01602-SCT**

*JAMES S. POWELL*

*v.*

*OUIDA CAMPBELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2004 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | KEITH R. RAULSTON |
| ATTORNEYS FOR APPELLEE: | WENDY C. HOLLINGSWORTH |
| | JAMES W. BACKSTROM |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/20/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.　An unsuccessful real estate purchaser appeals from a judgment dismissing his chancery court lawsuit for damages against the owner.　Finding no clear error in the chancellor's findings of fact and no error in the chancellor's legal conclusions, we affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2.　Ouida Campbell owned land in Jones County that contained two mobile home parks, the dried lake bed of Indian Springs Lake, and land positioned south of an old spillway.　Campbell and her husband moved to Gautier, Mississippi, in 1996 but continued to operate the mobile

home parks and maintained a mobile home for themselves at one of the parks. Campbell's husband became seriously ill a few years after moving to Gautier, and Campbell eventually decided to sell the property in Jones County.

¶3.    In April of 2000, Campbell contacted James S. Powell and his wife and asked if they would be interested in purchasing her property. The Powells, whose home was adjacent to the land Campbell hoped to sell, visited the property, and Campbell offered it to the Powells for $150,000. The Powells did not purchase the property, but a year later James Powell told Campbell that he was interested in buying a portion of her property - specifically, the old lake bed and the land south of the spillway.

¶4.    Powell subsequently arranged for an appraisal and survey of the land he hoped to purchase. Campbell and Powell agreed that Powell was to bear the expense of both the appraisal and survey. The appraisal was conducted in August of 2001 and indicated that the value of the property south of the spillway was $1,500 per acre and that the land encompassing the old lake bed was worth an estimated $1,000 per acre. Campbell agreed to sell Powell the land at the per acre amount determined by the appraisal. However, the survey work was not completed until early the next year.

¶5.    In October 2001, Campbell asked Powell for a $10,000 down payment. Powell's attorney advised having Campbell sign a contract for the sale of the land before giving her the money. Powell's attorney drafted a contract, but Campbell wanted parts of it changed before she would sign it. Campbell never received a revised version of the contract or the down payment she requested from Powell. In January of 2002, Powell had a law firm conduct a title search of the land. That process took two months, and Campbell eventually sent the attorney

2

conducting the title search a letter expressing her dissatisfaction at the length of the land sale process and her disappointment that Powell still had not provided her with a down payment.

¶6.     Unbeknownst to Powell or his attorney, Campbell had been offered $150,000 for the entire property and $13,000 for her mobile home by Kenneth Graves.  Graves eventually paid Campbell $5,000 in earnest money to secure his right to buy the property.  Anxious to sell her property, Campbell sold the land to Graves on March 26, 2002.

¶7.     Powell filed suit against Campbell in the Chancery Court of the Second Judicial District of Jones County asserting a number of causes of action and  arguing that he spent a great deal of money for an appraisal, survey, and title work in reliance on Campbell's agreement to sell the property.   Powell sought $100,000 in actual damages and $10,000,000 in punitive damages.   Campbell denied the claims and affirmatively pled that the alleged contract violated the statute of frauds.[1]    The chancellor found for Campbell opining that any oral contract for the sale of land would violate the statute of frauds, but that no contract for the sale of land had ever come into existence in this case.   The chancellor also found that the condition of a down payment was never met by Powell, and Powell's argument concerning equitable estoppel was without merit.  All claims against Campbell were dismissed.

**DISCUSSION**

¶8.     The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard.  *McNeil v. Hester*,

---

[1] Miss. Code Ann. § 15-3-1(c) (Rev. 2003) states that an action should not be brought to charge a defendant concerning a contract for the sale of lands unless "the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing."

753 So. 2d 1057, 1063 (Miss. 2000) (citing *Bank of Miss. v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992)). We review a chancellor's decision under an abuse of discretion standard. *Id.* (citing *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So. 2d 200, 204 (Miss. 1998)). However, for questions of law, the standard of review is de novo. *Duncan v. Duncan* 774 So. 2d 418, 419 (Miss. 2000) (citing *Consolidated Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999)).

### I. Whether the Chancellor Erred in His Findings of Fact.

¶9. Powell asserts that the chancellor erred in his determinations concerning five factual issues. All of the errors Powell alleges the chancellor made in his factual findings turn on conflicting testimony. Powell points to conflicts in the testimony of witnesses for both sides, but his occasional references to the record and testimony show no evidence that the chancellor's factual determinations were manifestly wrong or clearly erroneous. *See McNeil*, 753 So. 2d at 1063; *Weathersby v. Weathersby*, 693 So. 2d 1348, 1353 (Miss. 1997); *In re City of Horn Lake*, 630 So. 2d 10, 16 (Miss. 1993).

¶10. Powell has not shown any evidence that would warrant abandoning the deference we pay to factual findings by a chancellor. Powell's arguments involving issues of fact are without merit.

### II. Whether the Chancellor Erred in Rejecting Powell's Equitable Estoppel Argument.

¶11. The chancellor correctly found that no written contract for the sale of land had come into existence as required by the statute of frauds, and Powell argues that the chancellor erred in refusing to use equitable estoppel to enforce his oral agreement with Campbell. *See Reid*

*v. Horne*, 187 So. 2d 316, 318 (Miss. 1966). Powell asserts that he relied on Campbell's promise to sell her land and spent money in reliance on that promise. Powell argues that, based on his detrimental reliance, Campbell should be estopped from denying that a binding agreement was formed.

¶12. The doctrine of equitable estoppel may be used to enforce an oral contract which would otherwise be unenforceable under the statute of frauds. *Koval v. Koval*, 576 So. 2d 134, 137 (Miss. 1991); *Sanders v. Dantzler*, 375 So. 2d 774, 776 (Miss. 1979). However, estoppel should only be used in exceptional circumstances and must be based on public policy, fair dealing, good faith, and reasonableness. *PMZ Oil Co. v Lucroy*, 449 So. 2d 201, 206 (Miss. 1984). *See also McLearn v. Hill*, 177 N.E. 617, 619 (Mass. 1931); *Koval*, 576 So. 2d at 137; *Sanders*, 375 So. 2d at 776-77.

¶13. Knowing that Campbell was anxious to sell her property and in immediate need of the proceeds from the sale, Powell unreasonably failed to give Campbell a down payment to secure his right to purchase the property. After eight months, Powell still had not provided Campbell with a written contract or any earnest money and had allowed inaccurate survey lines and incomplete title work to further complicate the agreement to sell Campbell's property. While Powell did take financially detrimental steps in reliance on Campbell's promise, he simply has not shown that, in light of his actions, estoppel would be the most fair and reasonable remedy or that injustice can only be avoided by enforcement of Campbell's promise. *See PMZ Oil Co.*, 449 So. 2d at 206; *Sanders*, 375 So. 2d at 776. We find that the chancellor did not err

in refusing to apply equitable estoppel in this case or in denying Powell's request for reliance damages.

> ### III. Whether the Chancellor Erred in Denying Powell Restitutionary Relief.

¶14. Powell also asserts that the chancellor erred in failing to award him restitutionary damages. The theory of restitution is founded on the unjust enrichment of one at the expense of another. *Fourth Davis Island Land Co. v. Parker*, 469 So.2d 516, 524 (Miss. 1985); *Magnolia Fed. Savs. & Loan Ass'n v. Randal Craft Realty Co.*, 342 So.2d 1308, 1311 (Miss. 1977). Unjust enrichment only applies to situations where there is no legal contract and "the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Koval*, 576 So. 2d at 136 (quoting *Hans v. Hans*, 482 So.2d 1117, 1122 (Miss. 1986)). Powell paid Campbell nothing, and he has failed to show that Campbell was unjustly enriched by retaining any money or property that should rightfully be his. Thus, the chancellor did not err in denying Powell's request for restitution damages.

## CONCLUSION

¶15. For these reasons, we affirm the chancellor's judgment.

¶16. **AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**