# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01405-SCT

*GROUND CONTROL, LLC d/b/a GROUND CONTROL OF ALABAMA, LLC AND FRANK BEATON*

*v.*

*CAPSCO INDUSTRIES, INC., W.G. YATES & SONS CONSTRUCTION COMPANY, HARRAH'S ENTERTAINMENT, INC., AND CHRISTOPHER KILLION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2015 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| TRIAL COURT ATTORNEYS: | BLEWETT W. THOMAS |
| | RODERICK MARK ALEXANDER, JR. |
| | MATTHEW WARD McDADE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | BLEWETT W. THOMAS |
| ATTORNEYS FOR APPELLEES: | RODERICK MARK ALEXANDER, JR. |
| | MATTHEW WARD McDADE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED; ON CROSS-APPEAL: REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART - 03/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     When this case was before this Court on interlocutory appeal, we reversed *in part*.

***Ground Control, LLC v. Capsco Indus., Inc.***, 120 So. 3d 365, 367 (Miss. 2013) (***Ground***

***Control I***).  Because it was undisputed that neither sub-subcontractor Ground Control, LLC, (Ground Control) nor subcontractor Capsco Industries, Inc., (Capsco)—both Alabama companies—had a statutorily required certificate of responsibility to work in this State, this Court agreed that the subcontract was void.  But we found, despite the void contract, "Ground Control should not be precluded from having the opportunity to proceed in court under a claim for the value of what it expended in labor and supplies on the project." ***Id.*** at 371.  So we remanded this case to the trial court so Ground Control could pursue the non-barred "claims of unjust enrichment and *quantum meruit*." ***Id.*** at 367.

¶2.    Despite this clear holding, Ground Control argues in this appeal that the trial court erred by limiting its claims on remand to unjust enrichment and *quantum meruit*.  But we find no error.  Instead, the trial court properly limited the issue at trial to Ground Control's claim for *quantum meruit* damages.

¶3.    We do, however, find W.G. Yates and Sons Construction Company (Yates) and Capsco have raised reversible errors in their cross-appeals. Based on the evidence presented at trial, we find Yates was entitled to a directed verdict because Ground Control failed to prove Yates's liability for *quantum meruit* damages.  We also find the *quantum meruit* damages award against Capsco was against the overwhelming weight of the evidence. Consequently, Capsco is entitled to a remittitur.

¶4.    We affirm on Ground Control's and Ground Control owner Frank Beaton's direct appeals.  On cross-appeal, we reverse the $36,644.69 judgment against Yates and render a judgment in Yates's favor.  We also reverse the $825,583.31 judgment against Capsco.  We

2

remand the *quantum meruit* claim against Capsco, instructing the trial court to conduct a new trial on damages alone, unless a remittitur of $626,407.31, making the damage award $199,096, is accepted by Ground Control and Capsco.

## Background Facts and Procedural History

### I.     Interlocutory Appeal

¶5.     This is the second time this case has come before this Court on appeal.

¶6.     In 2009, sub-subcontractor Ground Control sued subcontractor Capsco over work performed on the Margaritaville Hotel in Biloxi.  Ground Control also sued the project's general contractor, Yates, and owner, Harrah's Entertainment, Inc. (Harrah's).  But the trial court discovered Ground Control's subcontract with Capsco was void by statute, because neither party had a certificate of responsibility. *See* Miss. Code Ann. § 31-3-15 (Rev. 2010). So the trial court granted the defendants summary judgment on all of Ground Control's claims, because they stemmed from the void subcontract.

¶7.     On interlocutory appeal, we reversed in part.  ***Ground Control I***, 120 So. 3d at 367. "Although we agree[d] with the trial court's finding that the lack of certificates of responsibility rendered the parties' contract null and void, we f[ou]nd that Ground Control's claims for unjust enrichment and *quantum meruit* were not barred by Mississippi Code Section 31-3-21." *Id.* at 373.  We also reversed the grant of summary judgment in favor of Harrah's and Yates on purely procedural grounds—namely, the "failure to give proper notice of the conversion of the Rule 12 motion to dismiss to a Rule 56 motion for summary judgment." *Id.* at 371 (citing M.R.C.P. 12 and M.R.C.P. 56).

3

## II. Supplemental Complaint

¶8. On September 24, 2013, the mandate issued on the interlocutory appeal.

¶9. Despite the clear directive in ***Ground Control I***—remand for further proceedings on the issue of unjust enrichment and *quantum meruit*—Ground Control immediately moved to "supplement" its complaint with claims against Capsco and its principal, Christopher Killion,[1] based on a panoply of equity-based and nonequity-based theories, such as contract, statutory rights, and tort.[2] Against Yates and Harrah's, Ground Control sought statutory relief under Mississippi Code Section 85-7-131 or Section 85-7-181 (Rev. 2011),[3] as well as contract damages based on its claim that it was a "third-party beneficiary" to the contract between Harrah's and Yates. Ground Control also asserted a claim for *quantum meruit*—as well as other unspecified "equitable claims"—seeking Yates and Harrah's be jointly and severally liable with Capsco. In total, Ground Control requested $1.16 million in damages.

¶10. Operating under the assumption that its prior grant of summary judgment had been reversed *in full*, the trial court granted Ground Control's motion to supplement its complaint.

---

[1] Ground Control also sought to hold Capsco officers Loye McIlveene and Jason Dollar, as individuals, jointly and severally liable.

[2] In addition to asserting "extra-contractual" claims against Capsco, Ground Control added tort claims for fraud, failure to correct work, negligent supervision of employees, interference with business relations, conversion, bad faith, and self-dealing. Ground Control also alleged Capsco violated stop-pay notices and committed "other wrongs." Ground Control requested an accounting by Capsco and punitive damages.

[3] Since the filing of this suit, Section 85-7-131 has been amended to restrict application to water, oil, and gas wells and fixed machinery. Miss. Laws 2014, ch. 487, § 18, eff. from April 11, 2014. *See* Miss. Code Ann. § 85-7-131 (Supp. 2016). And Section 85-7-181 has been repealed in its entirety. Miss. Laws 2014, ch. 487, § 24, eff. from and after April 11, 2014.

4

Capsco responded with a third-party claim for fraud against Ground Control's principal, Frank Beaton. Beaton then asserted third-party counterclaims against Capsco and its officers for abuse of process, tortious interference with business relations, and repayment of a $75,000 construction loan, which Beaton had personally guaranteed.

### III.  Pretrial Motions

¶11.  Before trial, several parties moved for summary judgment. Harrah's and Yates's motion was denied, as was Ground Control's. But Beaton's motion for summary judgment on the claims against him personally was granted. So the trial court dismissed Beaton as a third-party defendant.[4] This left Killion as the only individual defendant.

¶12.  Also before trial, Capsco filed a motion *in limine* requesting Ground Control's damages claims be limited to the costs expended and materials purchased for the Margaritaville project. The trial court granted this motion. Specifically, the trial court ordered that Ground Control was limited to presenting evidence under a *quantum meruit* theory, based on this Court's mandate in **Ground Control I**. Consequently, the trial court ordered that "[a]ny alleged tort claims are dismissed and will not be presented at trial."

### IV.  Trial and Verdict

¶13.  A six-day trial was held in October 2014. Beaton testified Ground Control had expended $920,252.80 in unpaid labor and materials. But on cross-examination, he admitted some expenses were counted twice or did not apply to the Margaritaville project. He also admitted that his company had been paid more than a half-million dollars before it stopped

---

[4] By Ground Control's *ore tenus* motion, McIlveene and Dollar also were dismissed as individual defendants.

working on the project. When pressed, Beaton conceded that, once the figures were added up, Ground Control's claim for unpaid labor and services was only $199,096.

¶14. At the end of Ground Control's case-in-chief, Killion moved for a directed verdict in his favor individually. The trial court granted this motion, finding Ground Control had failed to present any evidence supporting its claim Killion was individually liable. The trial court also directed a verdict in Yates's and Harrah's favor on Ground Control's statutory-based claims, as well as its claim that it was a third-party beneficiary to the contract between Yates and Harrah's.

¶15. At the end of trial, on October 21, 2014, the jury was instructed that any recovery by Ground Control from Capsco, Yates, and/or Harrah's would be based on *quantum meruit* only and limited to the value of unpaid labor and services rendered. The jury found Ground Control was entitled to $862,228. And using the agreed-to form supplied to it, the jury apportioned 95.75% liability ($825,583.31) to Capsco, 4.25% liability ($36,644.69) to Yates, and 0% liability ($0) to Harrah's.

### V. Post-trial Motions

¶16. What should have signaled the end of this case at the trial level actually set off protracted post-trial litigation. As the trial court noted in one of its many post-trial orders, there were ninety-nine docket entries following trial.

¶17. Among these voluminous motions were Ground Control's motion to amend the verdict to "remove surplusage" (i.e., the apportionment of liability), its motion for pre- and post-judgment interest, and a motion for a new trial on the limited issue of Killion's personal

6

liability.[5] All of Ground Control's motions were denied,[6] except that in its final order, the trial court awarded *post*-judgment interest. This interest was set to accrue from the date of the final order, which was entered eleven months after the jury's verdict, due to Ground Control's multiple post-trial filings.

¶18. Capsco, Yates, and Harrah's filed a motion for judgment notwithstanding the verdict (JNOV). Alternatively, Capsco requested remittitur. These motions were denied.

¶19. Beaton, individually, also filed a post-trial motion. On September 9, 2015—the date of the final judgment[7]—Beaton moved for entry of a scheduling order or, alternatively, for a final judgment on his third-party claims. The trial court denied this motion, finding "no further action is required . . . as all claims alleged by any Party in this Cause have been adjudicated in the Final Judgment entered herein[.]"

### VI. Appeal and Cross-Appeals

¶20. With the final judgment being entered, finally, Ground Control and Beaton appealed. Capsco and Yates cross-appealed.[8] Harrah's is part of this appeal as appellee only.

---

[5] While those motions were pending, Ground Control also filed a motion to amend the pleadings to conform to the evidence presented at trial, followed by an amended motion to amend the pleadings. It also filed a motion for a trial setting of its tort claims.

[6] When its motions were denied, Ground Control filed a motion for a correction of the order denying a trial setting on the dismissed tort claims and denying pre-judgment interest. When these motions were denied, Ground Control inexplicably filed a motion for partial summary judgment on its "tort claims under Miss. Code Ann. § 85-7-183."

[7] A week later, on September 18, 2015, the trial court entered a corrected final judgment, clarifying additional claims had also been dismissed on directed verdict.

[8] In January 2016, Ground Control and Beaton moved to strike the notice of cross-appeal as untimely. But a panel of this Court denied the motion. It seems that Ground

7

**Issues on Appeal / Cross-Appeal**

¶21.    Ground Control raises six issues on appeal—primarily challenging the limitation of its recovery to *quantum meruit* damages, the special verdict form apportioning liability, and the denial of pre-judgment interest.[9]

---

Control and Beaton were trying to have it both ways—on the one hand arguing to this Court that the judgment in this case had become final and appealable on September 9, 2015, triggering the thirty-day window to appeal, but on the other hand arguing to the trial court that the judgment was not final on September 9, 2015, because Beaton's third-party claims had not been disposed of.

[9] Specifically, Ground Control argues:

I.      The circuit court committed reversible error by denying Ground Control's motion to delete surplusage from verdict.

II.     Should the apportionment of the verdict not be stricken as surplusage, Ground Control submits that the circuit court committed reversible error concerning the claims alleged against Yates and Harrah's.

III.    The Corrected Final Judgment contains inaccurate statements of both the claims that were presented to the jury and dismissed by directed verdict.

IV.     The circuit court committed reversible error by denying Ground Control's motion for the assessment of pre-judgment interest. Further, the assessment of post-judgment interest should accrue from October 21, 2014.

V.      The circuit court committed reversible error by dismissing Ground Control's claims alleging ultra vires acts by Capsco's owner Christopher Killion.

VI.     The circuit court committed reversible error by denying Ground Control a trial on its tort claims against Capsco and Killion that were pled in the Supplemental Complaint.

8

¶22.    On cross-appeal, Capsco attacks the $825,583.31 judgment against it, arguing it was entitled to a JNOV, alternatively, a remittitur.  Yates also cross-appeals, similarly asserting its motion for summary judgment, motion for directed verdict, and motion for JNOV should have been granted.

¶23.    Finally, Beaton appeals in his capacity as third-party plaintiff.  He claims his due-process rights were violated when the trial court denied him a jury trial on his third-party claims against Capsco and Capsco's owner, Killion.

**Discussion**

¶24.    Due to the multiple, often overlapping issues raised in the appeals and cross-appeals, we approach the questions raised categorically, instead of going through each party's appellate issues one-by-one.

> **I.      Did Ground Control forfeit its right to appeal when it seized $36,644.69 from Yates in satisfaction of the judgment?**

¶25.    The first question concerns a preliminary matter.  In its brief, Yates suggests that Ground Control forfeited its right to appeal when it garnished $36,644.69 from Yates's bank account to satisfy Yates's portion of the judgment.[10] But this Court has long held that "when the plaintiff accepted money paid, *he may still appeal, where the object of the appeal is simply to have a judgment modified by increasing his demand, as where sufficient damages had not been allowed*, or where proper interest had not been allowed." ***Inv'rs Prop. Mgmt.,***

_____

[10] In October 2015, after filing its notice of appeal, Ground Control filed a suggestion of garnishment with Yates's banks.  After the $36,644.69 was garnished, Yates moved for a satisfaction of judgment on November 6, 2015.  This motion was granted on December 2, 2015.

9

*Ltd. v. Watkins, Pitts, Hill & Assocs.*, 511 So. 2d 1379, 1383 (Miss. 1987) (quoting *Adams v. Carter*, 92 Miss. 579, 590-91, 47 So. 409, 410 (1908)). Here, the object of Ground Control's appeal is a larger judgment and pre-judgment interest. So we find it still may appeal, despite accepting Yates's payment. *See Davis v. Noblitt & Capers Elec. Co.*, 594 So. 2d 610, 613 (Miss. 1992) (clarifying "that the acceptance of the fruits of a judgment at law does not preclude appeal"). But because it accepted payment while its appeal was pending, Ground Control "holds the funds subject to any judgment which is rendered on appeal or possible cross appeal." *Id.*

¶26. The same is true for Yates. Its payment was not voluntary but instead made through an execution of a writ of garnishment. So the payment does not render Yates's cross-appeal moot. *See In re Estate of Pethan*, 475 S.W.3d 722, 727-28 (Mo. 2015).

**II.      Was Ground Control's potential recovery properly limited to *quantum meruit* damages?**

¶27. The next question is the most crucial to this appeal—Did the trial court properly limit the trial to Ground Control's claim for *quantum meruit* damages? Ground Control asserts that the trial court "committed reversible error by denying Ground Control a trial on its tort claims against Capsco and Killion that were pled in the Supplemental Complaint." It also "submits that the circuit court committed reversible error concerning the claims alleged against Yates and Harrah's." But based on our clear mandate in *Ground Control I*, we find no reversible error.

**A.      *Claims Against Capsco and Killion***

10

¶28. *Ground Control I* was not a blanket reversal of the grants of summary judgment. Instead, we agreed with the trial court that the subcontract between Capsco and Ground Control was void by statute. *Ground Control I*, 120 So. 3d at 368-69. Still, we reversed the grant of summary judgment "*in part*." *Id.* at 367 (emphasis added). Despite the void contract, we found Ground Control could proceed with its lawsuit "under a claim for the value of what it expended in labor and supplies on the project." *Id.* at 372.

¶29. Despite this clear, narrow holding, the trial court initially proceeded post-remand as if its grants of summary judgment had been reversed *in full*. The court permitted Ground Control, over the defendants' objection, to supplement its complaint to add various theories of recovery beyond unjust enrichment and *quantum meruit*. But before trial, the trial court properly recognized the limited scope of *Ground Control I*'s mandate and granted Capsco's motion *in limine*, thereby dismissing the initially granted supplemental claims. The court permitted Ground Control to proceed solely on its claim that it was entitled to recover *quantum meruit* damages.

¶30. Under the law-of-the-case doctrine, the trial court was bound to follow *Ground Control I*'s mandate. *See Moeller v. Am. Guar. & Liab. Ins.*, 812 So. 2d 953, 960-61 (Miss. 2002) (discussing the law-of-the-case doctrine). And that opinion found Ground Control's lawsuit based on the Margaritaville project survived summary judgment only as to its "claim for the value of what it expended in labor and supplies on the project." *Ground Control I*, 120 So. 3d at 371. Ground Control's original complaint, like its supplemental complaint, had brought more than just contract claims. *Id.* at 367. But in remanding this case, we did not

11

authorize Ground Control to pursue those dismissed claims. Rather, we expressly remanded for "proceedings on whether Ground Control [was] entitled to recover based on claims of unjust enrichment and *quantum meruit*." ***Id.*** at 367. Ground Control could not make an end run around our clear mandate by filing a "supplemental complaint" based on the same facts alleged in the original complaint.

¶31.    Nor could Ground Control rely on ***Ground Control I***'s "other penalties" language to support its argument it is entitled to recover more than unjust-enrichment and *quantum meruit* damages. In ***Ground Control I***, at the end of its discussion on Ground Control's ability to recover in light of its clear violation of Section 31-3-15, this Court stated, "We do not address the issue of other penalties, if any, that may be appropriate for the trial court to address." ***Id.*** at 371. On appeal, Ground Control claims these "other penalties" include finding the defendants liable in tort. But placed in its context, it is obvious that "other penalties" refers to the *statutory* penalties imposed by Sections 31-3-15 and 31-3-21 in addition to the penalty of voiding the contract. *See **Ground Control I***, 120 So. 3d at 368 (noting the statutory "penalties that serve to deter parties from entering illegal contracts—such as voiding the contract and imposing fines—apply to both parties"); *see also **Ace Pipe Cleaning, Inc. v. Hemphill Constr. Co., Inc.***, 134 So. 3d 799, 806 (Miss. Ct. App. 2014) (citing ***Ground Control I***, 120 So. 3d at 368) (finding the public policy behind Section 31-3-15 "was adequately protected by the statute's provision for fines and penalties"). So the reference to "other penalties" did not open the door for Ground Control to recover under other theories beyond unjust enrichment and *quantum meruit*. Rather, it merely provided the

12

trial court discretion to consider whether other statutory penalties applied. *See* Miss. Code Ann. § 31-3-21.

¶32.    Based on *Ground Control I*, we find the trial court properly granted Capsco's motion *in limine*, which limited Ground Control's evidence to *quantum meruit* damages only.

### B.    Claims against Harrah's and Yates

¶33.    In *Ground Control I*, we also held that the trial court erroneously converted Harrah's and Yates's motion to dismiss to a motion for summary judgment without first giving Ground Control proper notice.  *Id.* at 373.  For this reason, the grant of summary judgment in Harrah's and Yates's favor was dismissed.  Following remand, Harrah's and Yates renewed their motion for summary judgment—this time ensuring proper notice.  But the trial court ruled Ground Control should be permitted to present its claims against these defendants at trial.  However, once Ground Control made its case-in-chief, the trial court granted Harrah's and Yates's motion for a directed verdict on all but Ground Control's *quantum meruit* claim.  Specifically, Ground Control's contractual and statutory claims were dismissed.

¶34.    We find no error.  *Ground Control I*'s holding about the void subcontract impacted not only sub-subcontractor's claims against Capsco, but also against Yates and Harrah's.  In other words, the law of the case dictated that Ground Control was limited to unjust enrichment and *quantum meruit* claims against Yates and Harrah's as well.

¶35.    But even if Ground Control's non-*quantum meruit* claims against Yates and Harrah's had survived *Ground Control I*, we find the trial court's grant of a directed verdict at the close of Ground Control's evidence was still proper.  We review the grant of a motion for

13

a directed verdict de novo, viewing the evidence in the same light as the trial court—i.e., in the light most favorable to the nonmoving party. ***Fulton v. Robinson Indus., Inc.***, 664 So. 2d 170, 172 (Miss. 1995). A directed verdict is proper when "the plaintiff's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party." ***Id.***

¶36. Ground Control's evidence against Yates and Harrah's was clearly lacking. Ground Control had contended it was a "third-party beneficiary" to the contract between Harrah's and Yates. But to be a third-party beneficiary, the rights of the third-party must spring forth from the terms of the contract itself. ***Trammell v. State***, 622 So. 2d 1257, 1260 (Miss. 1993). And here, Ground Control failed to prove it had any right in the Harrah's and Yates contract placed there for its benefit. *See **id.*** Ground Control also asserted statutory rights under Section 85-7-131 and Section 85-7-181 of the Mississippi Code. But recovery under Section 85-7-131 required Ground Control to prove it was in a contractual relationship with Harrah's or Yates—something Ground Control did not prove and further *could* not prove based on its lack of a certificate of responsibility voiding any contract. *See* Miss. Code Ann. § 31-3-15. And Section 85-7-181, which has since been repealed,[11] had been declared unconstitutional by the Fifth Circuit. ***Noatex Corp. v. King Constr. of Houston, L.L.C.***, 732 F.3d 479, 487 (5th Cir. 2013). So its statutory claims also failed as a matter of law.[12]

[11] Miss. Laws 2014, ch. 487, § 24, eff. from and after passage (approved April 11, 2014).

[12] In its appellant's brief, Ground Control argues the trial court's Corrected Final Judgment does not "correctly represent the claims dismissed by directed verdict." The final judgment stated that Ground Control had brought statutory claims under Section 85-7-131, -181, *and* -183. Because Ground Control never asserted Section 85-7-183 in its complaint, it argues the trial court "could not have granted a directed verdict on an issue that was not

14

¶37.   Thus, we affirm the grant of a partial directed verdict in Yates and Harrah's favor.

### III.   Could Ground Control, the sub-subcontractor, bring a claim for *quantum meruit* damages against Yates, the primary contractor, or Harrah's, the project owner?

¶38.   On cross-appeal, Yates asserts the trial court did not go far enough when granting the directed verdict. Instead, Yates argues, the court should have dismissed the contractor *completely* through summary judgment, directed verdict, or JNOV.

¶39.   Yates argues our opinion in ***Redd v. L & A Contracting Co.***, 246 Miss. 548, 556, 151 So. 2d 205, 208 (1963), controls. After review, we agree. In ***Redd***, the contractor hired a subcontractor, who in turn hired a sub-subcontractor. When the subcontractor, who became insolvent, failed to pay for sub-subcontractor's services, the sub-subcontractor sued the general contractor. It reasoned that, because the general contractor had accepted the benefits of its work, it should be able to recover from the contractor "under the common law on the 'theorem of quantum meruit.'" ***Id.*** at 554, 151 So. 2d at 207.

¶40.   This Court rejected the sub-subcontractor's claim. Because *quantum meruit* is an implied contract theory, available only when there is no express contract, "[w]here there is a contract, parties may not abandon same and resort to *quantum meruit*." ***Id.*** at 556, 151 So. 2d at 208. In ***Redd***, this Court extended this prohibition to find "that a sub-subcontractor cannot sue on *quantum meruit* against a primary contractor for work done under an express contract with another person." So because the sub-subcontractor in ***Redd*** had an express

---

raised." While that may be so, there is obviously nothing "reversible" about this error. So we fail to comprehend why Ground Control raised this as a distinct issue on appeal.

contract with the insolvent subcontractor, it could not sue the general contractor under a *quantum meruit* theory. *Id.*

¶41. Here, the facts are different—the express contract between Ground Control and Capsco was void for public policy. But the principle is the same. Ground Control could not sue general contractor Yates for *quantum meruit* for work done under the voided (i.e., implied) contract with Capsco.

¶42. *Redd* reinforced the "general rule [that], in order to recover for work and labor on the theory of an implied contract, it is ordinarily deemed essential to show that the services were rendered under the reasonable expectation *that they would be paid for by the person sought to be charged*, and the person sought to be charged knew that the services were being performed with the expectation that he would pay for such work." *Id.* at 558, 151 So. 2d at 209 (emphasis added). In *Redd*, it was undisputed that the aggrieved sub-subcontractor had dealt with the subcontractor only. *Id.* at 555, 151 So. 2d at 208. Thus, it could only reasonably expect to be paid by the subcontractor.

¶43. Here, Beaton contended that Yates negotiated change orders directly with Ground Control. In other words, Ground Control presented evidence Yates knew Ground Control was performing the services under the change orders with the reasonable expectation it would be paid for them. *See id.* at 558, 151 So. 2d at 209. But Ground Control presented no evidence it reasonably expected *Yates* would be the one to pay Ground Control for these services. *See id.* Instead, both in his deposition and at trial, Beaton testified that his company looked *solely* to Capsco for payment for its services. Specifically, at trial, Beaton

16

admitted Ground Control "worked for Capsco" and any payment for its services "was going to come from" Capsco.

¶44. Even when viewing Ground Control's evidence favorably, it failed to support its claim that Yates was liable under *quantum meruit*, because it admitted its "services were rendered under the reasonable expectation that they would be paid for by" *Capsco*, and not "the person sought to be charged," Yates. Therefore, Yates's motion for a directed verdict on the *quantum meruit* claim should have been granted. *See Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 172 (Miss. 1995) (holding the grant of a directed verdict "is proper if the plaintiff's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party"). We reverse the damages award against Yates and render a judgment in its favor. Consequently, Ground Control must repay Yates the $36,644.69 it seized prior to the outcome of this appeal. *See Davis*, 594 So. 2d at 613.

¶45. We are of the same view for the jury's apportionment of zero liability to Harrah's. In its appeal, Ground Control challenges the jury's finding as not being supported by the evidence. But Ground Control offered no testimony that Harrah's knew Ground Control was working on the project or that Ground Control expected Harrah's to pay for it. *See Redd*, 246 Miss. at 555-58, 151 So. 2d at 208. So the jury's finding of zero liability was not against the overwhelming weight of the evidence. And Ground Control's motion for a new trial or JNOV against Harrah's was properly denied.

**IV.    Should subcontractor Capsco, contractor Yates, and owner Harrah's have been jointly and severally liable?**

17

¶46. Shifting from the legal basis for damages to the damages award itself, Ground Control's primary challenge on appeal is that the damages award should not have been apportioned between Capsco (95.75%) and Yates (4.25%). Instead, it makes the bold assertion that the jury intended Capsco, Yates, and Harrah's to be jointly and severally liable. It describes the special verdict form used by the jury as "surplusage." And it argues the trial court erred by not granting its motion to "remove" this surplusage from the verdict.

¶47. This argument fails for three reasons.

¶48. First, this argument is clearly waived. Ground Control made no objection to the special verdict form during trial. Instead, it raised its "surplusage" argument for the first time in a post-trial motion. And as this Court has said, "Objections to jury instructions made after the jury has returned a verdict and been discharged [are] simply too late." *Barnett v. State*, 725 So. 2d 797, 801 (Miss. 1998).

¶49. Second, even if not waived, this argument fails as a matter of law. As discussed in the previous section, this Court in *Redd* rejected Ground Control's contention that every entity involved in a construction project is jointly and severally liable to a sub-subcontractor for *quantum meruit* damages. *See Redd*, 246 Miss. at 555-58, 151 So. 2d at 208. Instead, a sub-subcontractor can recover only *quantum meruit* damages from the person to whom it reasonably looked for payment. *Id.* So by instructing the jury to apportion liability based on who was reasonably expected to pay Ground Control, the trial court provided the jury with an accurate statement of the law.

18

¶50. Third, this argument is moot. Because we find Ground Control failed to present evidence that it reasonably expected either Harrah's or Yates to pay it for services it performed on the Margaritaville project, neither owner nor general contractor could be liable *at all*—let alone jointly and severally liable with Capsco.

## V. Was the jury's verdict against Capsco supported by the evidence?

¶51. Capsco also challenges the jury's verdict on cross-appeal. It argues damages awarded to Ground Control should have been limited to restitution damages (the value of the labor and supplies expended on the project) and not expectation damages (what Ground Control would have earned if the subcontract had not been void). And despite the motion *in limine* expressly limiting Ground Control's evidence to restitution damages, Capsco contends "Ground Control nevertheless proceeded to introduce its expectation damages at trial."

### A. Inapplicable Quasi-Estoppel Doctrine

¶52. Capsco's contention that Ground Control—in clear conflict with ***Ground Control I***'s mandate—was seeking breach-of-contract damages instead of *quantum meruit* damages is bolstered by Ground Control's own argument on appeal.

¶53. In an effort to obtain pre-judgment interest, Ground Control insists its damages claim was liquidated and based on quasi-estoppel, not *quantum meruit*. Ground Control claims this case is just like ***T.C.B. Construction Co. v. W.C. Fore Trucking Co.***, 134 So. 3d 752 (Miss. Ct. App. 2012) (reversed in part on other grounds), where the contractor was estopped from denying the existence of a modified contract with the subcontractor based on the doctrine of quasi-estoppel. There, because the contractor had clearly accepted the benefit of the

19

subcontractor's work outside the originally agreed-to geographical area, the Court of Appeals held the contractor could not deny the contract had been modified. Thus, the subcontractor was owed the contract price. *Id.* at 762-64. And because this price was fixed, or liquidated, the subcontractor was also entitled to pre-judgment interest. *Id.* at 766-67.

¶54. In an effort also to obtain pre-judgment interest, Ground Control insists that its judgment, like that in *T.C.B.*, was based on quasi-estoppel, and not *quantum meruit*. But quasi-estoppel, as applied in *T.C.B.*, is the doctrine that "[w]here one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith." *T.C.B.*, 134 So. 3d at 759 (quoting *Wood Naval Stores Exp. Assen v. Latimer*, 220 Miss. 652, 664, 71 So. 2d 425, 430 (1954)). And here, as matter of public policy, Capsco "did not have the right to accept or reject the transaction, because the subcontract was void and unlawful under [Section 31-3-15]." *Ace Pipe Cleaning, Inc. v. Hemphill Constr. Co.*, 134 So. 3d 799, 805 (Miss. Ct. App. 2014). So "the doctrine of quasi-estoppel does not apply." *Id.* Indeed, this Court has already held that the contract between Capsco and Ground Control was void under Section 31-3-15. *Ground Control I*, 120 So. 3d at 367. So Ground Control's argument—that Capsco was estopped from denying the existence of a contract that this Court found never existed—defies logic.

¶55. It also defies the mandate of *Ground Control I*, which specifically found that the applicable equitable doctrine for when a contract is void under Section 31-1-15 is "*quantum meruit* or unjust enrichment," and not quasi-estoppel. *Ground Control I*, 120 So. 3d at 369.

20

*See also* **T.C.B.**, 134 So. 3d at 760-61 (noting *quantum meruit* and unjust enrichment are not synonymous with *quasi-estoppel*). This is because "[u]njust enrichment applies to situations" like the one here "'where there is *no legal contract*' and 'the person sought to be charge is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" **Ground Control I**, 120 So. 3d at 371 (quoting **Powell v. Campbell**, 912 So. 2d 978, 982 (Miss. 2005)).

### B. *Unsupported* Quantum Meruit *Damages Award*

¶56.    Despite this Court's clear pinpoint of unjust enrichment or *quantum meruit* as the appropriate equitable doctrine, Ground Control goes so far as to argue "no evidence at trial would substantiate an award of *quantum meruit* damages under Mississippi law." Ground Control then doubles down in its cross-appellee brief, reasserting that it "did not allege a claim for *quantum meruit* recovery against Capsco in the Supplemental Complaint."

¶57.    In response, Capsco requests on cross-appeal that we reverse the jury's award and render a judgment in its favor. Capsco points out that the sole claim presented to the jury was damages based on *quantum meruit*. And since Ground Control insists there was no evidence to support a *quantum meruit* award, then the judgment must be reversed entirely.

¶58.    Though we decline to impose such a harsh result, we do take Ground Control's argument of no evidence of *quantum meruit* damages into account when reviewing the record evidence on damages. In other words, Ground Control's assertion has prompted us to consider carefully whether its damages evidence fell under the category of *quantum meruit* damages or—as Capsco contends—actually reflects what it *expected* to earn under the

21

contract. And having done so, we find, based on the evidence, no reasonable jury could have awarded $825,583.31 in *quantum meruit* damages against Capsco.

¶59.    The jury had been instructed "that any recovery by Ground Control, LLC based in *quantum meruit*, is limited to the value of the labor and services rendered by Ground Control, LLC to the defendants for which payment has not been tendered yet." And the jury heard Beaton concede that, after subtracting the half-million dollars in payments Capsco had already tendered to his company, Ground Control's claim for unpaid labor and services was only $199,096. Thus, the jury had no evidentiary basis for finding Capsco liable for more than four times that amount.

¶60.    For this reason, we find the trial court abused its discretion when it denied Capsco's motion for remittitur. *See Gatewood v. Sampson*, 812 So. 2d 212, 222 (Miss. 2002) (reviewing the denial of a motion for remittitur for abuse of discretion). While the amount of damages is primarily a question for the jury, Mississippi Code Section 11-1-55 (Rev. 2014) authorizes a trial court to grant a remittitur when "the damages awarded were contrary to the overwhelming weight of credible evidence." Such is the case here—the damages awarded went against the overwhelming weight of the evidence.

¶61.    Of course, Section 11-1-55 also provides, in the case where a remittitur is warranted, the parties may accept the remittitur or proceed on a new trial on damages. *See Dedeaux v. Pellerin Laundry, Inc.*, 947 So. 2d 900, 908 (Miss. 2007) (clarifying that a "grant of an additur or remittitur shall take effect only if accepted by all the parties," so "[i]f all parties do not agree to the additur or remittitur, then each party shall have the right to . . . demand

22

a new trial on damages"). So on remand, Ground Control and Capsco have two options—agree to a $626,407.31 remittitur, making the damage award against Capsco $199,096, or proceed to a new trial on *quantum meruit* damages against Capsco only.

**VI.    Was Ground Control entitled to pre-judgment interest? Alternatively, should post-judgment interest have accrued from an earlier date?**

¶62.    Though we reverse the damages award against Yates and Capsco, we still find it prudent to address Ground Control's interest-based claims, lest Ground Control try to seek on remand interest it is not entitled to.

### A.    Pre-judgment Interest

¶63.    As mentioned in the previous section, because pre-judgment interest may be awarded in breach-of-contract cases, when the amount of damages is certain, *i.e.*, liquidated,[13] Ground Control argues its damages claim was liquidated and based on breach of contract, not *quantum meruit*.  But as already discussed, this argument fails in light of ***Ground Control I***'s clear holding.  The only damages available were for *quantum meruit*.  As this Court has held, where—as is the case here—there is a bona fide dispute as to whether the plaintiff is entitled to a *quantum meruit* award and, if so, what amount, then pre-judgment interest is not warranted.  ***In re Estate of Gillies***, 830 So. 2d 640, 647 (Miss. 2002).

### B.    Post-judgment Interest

¶64.    Alternatively, Ground Control claims the post-judgment interest it was awarded did not start accruing early enough.  The trial court awarded post-judgment interest in its final

---

[13] *See, e.g.*, ***Warwick v. Matheney***, 603 So. 2d 330, 342 (Miss.1992).

23

judgment, entered September 2015. Ground Control claims interest should have begun to accrue in October 2014, when the jury entered its verdict. But we find the trial court did not abuse its discretion.

¶65. Because the judgment was not based on a contract with a set interest rate, the trial court had discretion to set the rate of interest, as well as the date from which interest would accrue. Miss. Code Ann. § 75-17-7 (Rev. 2016).[14] *See also* ***U.S. Fid. & Guar. Co. v. Estate of Francis ex rel. Francis***, 825 So. 2d 38, 50 (Miss. 2002) (finding the trial court's decision about post-judgment interest fell "within the bounds of his discretionary authority"). The trial court decided to impose an eight-percent rate from the date of the final judgment (September 18, 2015). Considering the eleven-month delay between the jury's verdict and the final judgment was almost entirely attributable to Ground Control's voluminous post-trial motions, there was nothing unfair about the trial court's judgment, so far as post-judgment interest is concerned.

¶66. Thus, if the parties accept the $626,407.31 remittitur, Ground Control is not entitled to post-judgment interest before the final judgment date of September 18, 2015. If the parties elect to have a new trial on damages, the issue of post-judgment interest, if any, will be soundly within the trial court's discretion.

---

[14] Mississippi Code Section 75-17-7 provides—

All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

### VII. Were the individual claims properly dismissed?

¶67.    There are two final matters to address.

#### A.    *Claims Against Killion Individually*

¶68.    The first is the trial court's dismissal of Capsco officer Killion as an individual defendant.  On appeal, Ground Control makes the broad assertion that Killion used Capsco as his "alter ego" and, thus, should be personally liable for its debts.  But Ground Control fails to cite any applicable case law about piercing the corporate veil to find a corporate officer personally liable.  Instead, it cites irrelevant cases about undoing fraudulent transfers.  But that was not at issue.  The issue concerning Killion was whether Ground Control could reasonably look to Killion *personally* to recover *quantum meruit* damages.  And Ground Control failed to present evidence that his Alabama company's separate corporate identity should be disregarded.   Ground Control presented no evidence that Killion incorporated Capsco "solely to avoid personal liability of the owner while reserving to the owner the benefits gained through use of the corporate name."  ***Bon Secour Fisheries, Inc. v. Barrentine***, 408 So. 2d 490, 491 (Ala. 1981).  Nor did it show that Capsco was so organized and controlled as to make it a mere instrumentality of Killion.  *See id.*  Based on this lack of evidence, the trial court properly dismissed Killion as an individual defendant.

#### B.    *Claims by Beaton as a Third-party Plaintiff*

¶69.    The second issue is the sole claim raised in the appeal brought by Beaton in his capacity as third-party plaintiff.  He claims his constitutional rights were violated when the trial court denied him a jury trial on his pending third-party claims.  But we find the trial

court did not reversibly err by denying Beaton's post-trial motion and declaring all outstanding issues had been resolved in its final judgment.

¶70.    This is because, with the exception of his abuse-of-process claim, the claims asserted in Beaton's third-party complaint had been resolved. Prior to trial, Beaton had been dismissed as a third-party defendant because the trial court agreed that he had acted solely in his capacity as Ground Control's owner, not individually. Consequently, he had no personal claims related to the Margaritaville project. Instead, these claims belonged to his company—Ground Control—which had been found to be the only "person" who dealt with Capsco. So the trial court was right to hold that "no further action is required . . . as all claims alleged by any Party in this Cause have been adjudicated in the Final Judgment entered herein[.]"

¶71.    The only personal claim that arguably was not adjudicated was the abuse-of-process claim. But we find the trial court did not reversibly err by dismissing this claim. The crucial element of an abuse-of-process claim is "the intent to abuse the privileges of the legal system." *McLain v. W. Side Bone & Joint Ctr.*, 656 So. 2d 119, 123 (Miss. 1995). But here, in bringing claims against Beaton individually, Capsco was simply responding to similar claims made by Ground Control against Capsco's officers individually. So we fail to see how the third-party complaint, in and of itself, was abusive.

¶72.    Moreover, it was Beaton who moved pretrial to sever all claims against individual defendants due to his wanting to keep unsavory details about his and the officers of Capsco's behavior during their work on the Margaritaville project. Having successfully kept this

26

evidence out of the trial, Beaton then waited eleven months after trial—until the final judgment was entered on September 9, 2015—to request a trial on his third-party claims. At this point, the trial court had the authority to deem abandoned any outstanding claims, thus finally clearing this protracted litigation from its docket. *See Cox v. Cox*, 976 So. 2d 869, 874 (Miss. 2008) ("The power to dismiss for failure to prosecute is granted not only by Rule 41(b), but is part of a trial court's inherent authority and is necessary for "the orderly expedition of justice and the court's control of its own docket.").

**Conclusion**

¶73.   On all issues raised on Ground Control's appeal, we affirm.  On the issue raised in Beaton's appeal, we also affirm.  But on the issue of *quantum meruit* recovery raised in Yates's cross-appeal, we reverse the $36,644.69 judgment against Yates and render a judgment in Yates's favor.  Thus, Yates is entitled to the $36,644.69 it involuntarily paid to Ground Control through a writ of garnishment.  Finally, on the issue of the amount of *quantum meruit* damages against Capsco, raised in Capsco's cross-appeal, we reverse the $825,583.31 judgment against Capsco and remand the damages issue to the trial court.  On remand, we instruct the trial court to grant Capsco a $626,407.31 remittitur, making the damages award $199,096.  If Ground Control and Capsco do not agree to remittitur, then the trial court should proceed with a new trial on damages against Capsco.

¶74.   Based on what transpired following our mandate in ***Ground Control I***, we feel compelled to make ourselves very clear.  The only plaintiff on remand is Ground Control. The only defendant is Capsco.  The only issue is *quantum meruit* damages.  And the only

27

options available to Ground Control and Capsco are to agree to a $199,096 damages award

or proceed to a new trial on *quantum meruit* damages.

**¶75.   ON DIRECT APPEAL: AFFIRMED; ON CROSS-APPEAL: REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART**.

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR.**